BOWES, Judge.
Plaintiff appeals a jury award in her favor in the amount of $1,000.00, contending that the award was insufficient to compensate her for damages which she suffered in an automobile accident. We affirm the verdict in her favor but amend and increase the award to a total of Forty-five hundred ($4,500.00) dollars.
The circumstances of the accident are not in dispute. This was a rear-end collision and the jury found that the plaintiff was not at fault. Indeed, prior to filing suit, Allstate Insurance Company, insurer of defendant Williams paid plaintiff for damage to her automobile in the amount of $600.00. Suit was filed for general damages of medical expenses, pain and suffering, and wage loss. At the trial on the merits, it was stipulated that plaintiff’s relevant medical bills totaled $535.00; costs of medications prescribed and taken by plaintiff were not introduced.
It was also established by medical testimony, as well as by testimony of plaintiff, that Mrs. Butler was treated by Drs. Hanna and Mary over a period of eleven months for 13 visits, most of which were in connection with the accident-related injuries. At least two of these visits were for abdominal problems, but most of Mrs. Butler’s complaints were basically for cervical and lower back strain and for a bruised knee.
Finally, Mrs. Butler claimed to have lost 10 days of work; 4 days immediately following the accident, which was uncontra-dicted and apparently conceded by appellee, with the remainder due, presumably, to lingering physical discomfort. Whether or not these other 6 days on which plaintiff missed work coincided with her medical appointments, we do not know from the record. In examining the testimony of Mrs. Lacey, the office manager at plaintiff’s place of employment, it is extremely difficult to ascertain what genuine wage losses Mrs. Butler suffered.
In its award, the jury did not divide the total amount ($1,000.00) into components— the verdict was a lump sum. Apparently, $535.00 was for the stipulated medical ex *1157 pense. The remaining $465.00 was apparently an award for pain and suffering, as well as lost wages.
From the testimony of the plaintiff herself, as well as that of the office manager, plaintiff had been employed only a few weeks, since December of 1979, before the accident of January, 1980, occurred. Therefore, it is difficult for this court to reconstruct what may have been the jury’s findings on the total amount of lost wages. Office records only indicate a total number of hours worked in a 2-week period, without regard to what particular days each employee may have missed. Plaintiff was paid $3.25 per hour (raised later to $3.35 per hour) for the first 80 hours of the two-week period and time and one-half for all hours thereafter.
In his brief, appellant’s counsel argues that the jury should have concluded the wage loss to be $389.60 over a 10-day period. Counsel for appellee did not address this issue in his brief, other than to concede that it was proven at the trial that plaintiff returned to work 4 days after the accident (thereby losing 4 days wages).
We do not feel it important to belabor further the jury’s conclusion on lost wages, for, whatever amount they determined it to be, after the award for these wages and the stipulated medical expenses of $535.00, there was precious little left out of the total award of $1,000 to be attributed to pain, suffering and general damages. Whatever amount that was, we do not feel it was adequate.
On her first visit to Dr. Hanna on January 25th, four days after the accident, appellant complained of a bruised knee and cervical pain and was given a pain-killing medicine and a muscle relaxant. Appellant, herself, testified on direct examination that “at that time, I was only having a few minor pains in my neck and then my back, my knee...” [emphasis ours].
On her second visit, some two and a half weeks later, she complained of lumbar or lower back pain, which Dr. Hanna found was evidenced and verified by a positive “straight leg raising test” — an objective sign widely accepted in the medical field. The doctor also found her cervical problem had improved somewhat and the knee pain was resolved.
On her third visit on February 26th, Dr. Hanna found that the neck problems continued to improve but Mrs. Butler still had low back pain evidenced by positive objective symptoms of muscle spasms and the straight leg raising test and Dr. Hanna continued to treat appellant with the medications. On cross examination, Dr. Hanna stated unequivocably that it is not unusual for cervical and lumbar pain and spasms to develop quite some time after an injury. (Dr. Mary, the subsequent treating physician, later gave similar testimony). She also indicated she felt these symptoms were related to appellant’s injury.
Dr. Charles Mary, Dr. Hanna’s associate, took over treatment of Mrs. Butler at this point, as Dr. Hanna was about to have a baby. He first saw her on March 11, 1980, and found she was complaining of pain in the lower back which was radiating into the buttocks and her left leg ... that the straight leg test was positive and that standing, bending or on flexion produced tenderness and spasm in the lumbar or lower back area. On March 25th, Mrs. Butler was not complaining of any pain on examination and was told to return to her regular duties, but to come in again if she needed to.
On April 29th, she returned complaining of backache, stated she was having to sit for long hours at her job as a dispatcher, which she felt was causing her pains, and was given an injection of Hexadrol, an anti-inflammatory medication, and told to return. At the time of this testimony, Dr. Mary also said that the type of work appellant was doing, i.e., standing or sitting for long hours, could aggravate the type of back condition that she had, which condition Dr. Hanna felt was related to the injury in this case.
From here on, Mrs. Butler’s medical history appears to be as follows:
*1158 May 9 Pain in low back, both dorsal and lumbar areas; Medication was continued.
May 30 Doing fine. Occasional tightness in back. Told to return as needed.
July 11 Gastro-intestinal problems — no problems relating to back.
Aug. 1 Full range of motion in back. Straight leg test negative.
Sept. 12 Full mobility of back and discharged as far as back injury was concerned.
Oct. 31 Low back pain had reoccurred without any intervening injury or fall. Exam revealed mild spasms of dorsal and lumbar area. Again, diagnosis was lumbar strain.
Nov. 14 Pain in trapezius muscles, unrelated to low back pain.
We find it significant here that the defendants failed to introduce one scintilla of opposing or contrary medical evidence to the testimony of plaintiff and both doctors who treated her. We also note that Mrs. Butler testified that before the accident she had never had any injuries to or problems with her back or neck and led a completely normal, active, life, including jogging and dancing.
A thorough and complete appraisal of all of the testimony convinces us that, as a result of this accident, Mrs. Butler suffered a bruised knee and cervical strain, both of which cleared within a few weeks, and a lumbar or low back strain .which caused her active and apparently almost continuous pain and required active medical treatment, including pain-killing drugs, muscle relaxants, and an injection, which continued on for at least four months, with probably occasional pain for quite some time longer. In fact, Dr. Mary answered affirmatively when asked by appellant’s counsel if it was his opinion that Mrs. Butler had sustained a low back injury for a period of 10 months and at least into the summer, which recurred with some types of physical activity.
We also feel that the medical testimony shows that the long hours which Mrs. Butler was forced to work as a dispatcher to support her children, which required almost constant sitting, aggravated the low back injury from the accident and was not the original cause of it.
Our opinion is reinforced by what we consider the forthright testimony of Mrs. Butler and her apparent honesty and good character. The testimony reveals that she had two subsequent accidents in which she was not at fault and for which she made no claims for herself.
We are well aware of our well established rule of law that “... before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award.” Coco v. Winston Industries, 341 So.2d 332 (La.1977). Yet:
Appellate review of small damage awards presents difficulty. To decrease or increase such an award would not involve any large sum. Such awards, however, must be reviewed under the same standards as larger awards and where the award of the trial court falls below or above what the appellate court views as the range of discretion, an adjustment must be made. Henry v. Traveler’s Insurance Co.. 398 So.2d 7 (La.App. 3rd Cir.1980).
We come to our conclusion fully cognizant of the limitations placed on the appellate court in changing an award made by the court in its discretionary powers; yet we find there was not sufficient evidence for the jury to conclude as it did. The record supports a finding that plaintiff was injured substantially and suffered the effects of the injury.
In this case, we are compelled to the conclusion that the jury did abuse its discretion since its award for pain and suffering and any other damages amounted to no more than a few dollars by any theory of division of damages reached by them. We feel that such a small amount is entirely inadequate in view of the damages outlined above and are of the opinion that the total jury award should be increased to $4,500.00, thus giving to plaintiff a sum slightly in excess of $4,000.00 for pain and suffering and all other general damages.
*1159 Accordingly, the judgment of the trial court is amended so as to affirm judgment in favor of Olivia Butler and against Eric Williams and Allstate Insurance Company.
The award is amended and increased to the sum of $4,500.00 together with legal interest thereon from date of judicial demand until paid, and for all costs of the proceedings. All costs of this appeal are assessed against appellees.
AFFIRMED AND AMENDED.