DUFRESNE, Judge.
This is an appeal by Many Heymann, plaintiff-appellant, wherein he seeks an increase of a jury award of $12,000 in his *862 favor and against Allstate Insurance Co., Inc., defendant-appellee, for damages sustained in an automobile-motorcycle accident. Because we find that the trier of fact abused its much discretion in fixing this award, the judgment is increased to $30,000.
The facts of the accident are simply that Heymann was riding his motorcycle shortly after midnight on a boulevard when he was struck from behind by an automobile driven by Sherryl Kay, Allstate’s insured. The jury found that the sole cause of the accident was Kay’s negligence, and that finding has not been contested here.
At trial, Heymann attempted to prove that as a result of the accident he suffered 1) a shoulder injury, 2) damage to his motorcycle, and 3) cervical and lumbar spinal injuries which prevent him from returning to his prior work. The'jury awarded Hey-mann $12,000, but did not apportion this damage award among the specific injuries claimed. Heymann now brings this appeal on the sole ground that the jury abused its “much discretion” in fixing this award, and asks this court to increase it to $60,000.
In order for an appellate court to change an award for damages fixed by the trier of fact in suits for quasi offenses, it must first make an articulated analysis of the particular facts of the case before it. Only if this analysis discloses an abuse of discretion may the award be considered insufficient or excessive. Once such a determination of abuse has been made, the court may then resort to prior awards in comparable cases for guidance in fixing the appropriate award in the case before it, Reck v. Stevens, 373 So.2d 498 (La.1979).
Turning to the facts before us, it is clear to this court that this award is an abuse of the trier of facts’ much discretion in that the award is insufficient. Of the three general areas of damages claimed by Hey-mann, we first address briefly the shoulder injury. Heymann admits in his brief that there was sufficient evidence before the jury to support the conclusion that this injury was not causally related to the accident. We agree, and therefore eliminate from consideration here any damages related to that injury.
As to damage to the motorcycle, the undisputed expert testimony of Michael Goff was that to restore it to its original condition at the time of the accident would cost $3,516.00. Allstate argues to the contrary that because Goff also stated that an ordinary motorcycle of the same make and age as Heymann’s would be worth $2,500.00, that that is the proper figure. It fails to mention however, that Goff further testified that the higher estimate was based on certain rare and, in motorcycle circles, widely sought after parts and equipment which were damaged in the accident. We therefore find that the motorcycle was damaged in the amount of $3,516.00.
The third area of damages, the back and neck injuries, require a more detailed analysis. On May 23, 1980, two days after the accident, Heymann was seen by Dr. Bert Bratton, a neurosurgeon. On that date Heymann complained of pain in the cervical and lumbar areas of his spine. Dr. Bratton originally diagnosed the problem as soft-tissue injuries, and prescribed pain and muscle relaxant medication. By August of 1980, Heymann’s pain had subsided, and he was discharged by the physician.
However, in March, 1981, Heymann returned to Dr. Bratton complaining of weakness in his left arm. The physician immediately suspected that this symptom may have been related to possible cervical nerve damage, and ordered Heymann hospitalized for a cervical and lumbar myelogram. The result of that test showed only a minor disc defect in the cervical region, but also revealed a more serious defect, possibly a ruptured disc in the lumbar area.
Because of this lumbar disc problem, it was Dr. Bratton’s unrefuted opinion that Heymann suffers a permanent bodily disability of 15% to 20% and that he must in the future avoid activities which place stress on his spine. He should also limit his work to jobs which do not require excessive bending and lifting of more than 25 *863 pounds. It was the doctor’s further opinion that in all probability, Heymann will need either surgery, or another “invasive”' type of treatment later in life to ameliorate the disc problem. However, he did not recommend such treatment at the moment because it would not cure the disability and might lead to other adverse consequences. The existence of this disc injury and resulting disability was unrefuted at trial and is not contested by Allstate here.
The next question is whether this back problem was causally related to the accident. Allstate admits that Heymann suffered an injury to his back in the accident. However, it contests the assertion by Hey-mann that the disc problem discovered by the physician in March, 1981, was also caused by the accident. Our review of the evidence reveals that it preponderates in favor of a finding that the accident did indeed cause the disc problem.
Dr. Bratton testified that his initial diagnosis was a soft tissue injury in the back which he expected would resolve itself within a few months. He further stated, however, that this was a “working diagnosis”, as opposed to a “proven diagnosis” which would have required further testing. These further tests were not conducted during the three months of treatment immediately following the accident because it was the doctor’s opinion that the back pains were resolving themselves in the expected manner for soft tissue injuries. He further stated that when he discharged Heymann in August, 1980, the patient was still complaining of some back pain which was related to his physical activities, but he expected these pains to disappear in time.
When Heymann returned to the doctor in March, 1981, complaining of numbness in his arm, it was decided that further testing for possible nerve damage in the cervical area was necessary. A myelogram was performed and it showed no serious neck problem, but revealed instead the somewhat unexpected disc damage in the lumbar area. It was Dr. Bratton’s unrefuted opinion that this lumbar injury was related to the accident of May, 1980.
Allstate contends to the contrary that the disc problem was not shown to have been caused by the accident. It argues on the one hand that Bratton’s discharge of Hey-mann in August, 1980, showed that the original back pains had resolved themselves by that date, and therefore that the disc problem must have developed after the accident from unrelated causes. In further support of this position, Allstate points out that when Heymann returned to Bratton in March, 1981, he had no complaints of continuing back pain. These assertions are not supported by the evidence.
While it is true that Heymann made no specific complaint of back pains in March, 1981, it was Bratton’s testimony that this was not unusual because often patients will report only present symptoms and not mention other problems which they fail to relate to their immediate pain. We also note that Heymann was still complaining of back pains to Bratton in August, 1980, but related these to his activities. Moreover, Heymann testified that he continued to have occasional back problems between August, 1980, and March, 1981, especially when he did heavy work. Finally, Bratton corroborated Heymann’s testimony on this point when he stated that heavy work would probably cause back pains. In these circumstances, we find that the lumbar disc injury was proved to have been caused by the accident, and if the jury found otherwise, it was manifestly erroneous. Perni-ciaro v. Brinch, 384 So.2d 392 (La.1980).
Allstate also argues in the alternative that the back injury predated the accident. It bases this assertion on Bratton’s statement that he could not answer “with any medical certainty” the question of whether the disc injury may have existed before the accident. This argument is also without merit because the preexistence of the injury is mere speculation and completely uncorroborated by any other evidence in the record.
We must next turn to the damage award itself. The record shows that Hey-mann is a motorcycle and marine mechanic. *864 It further shows that both of these occupations require extensive bending and stooping and the lifting of weights above 25 pounds. The unrefuted testimony of Dr. Bratton is that he should abandon both of these types of work or risk a serious worsening of his back condition. We also note that Heymann was earning over $18,000 per year from August, 1980, to February, 1982, as a shipyard worker, and that during this period he suffered frequent back pains. Finally, as shown above, Heymann sufferes a 15 to 20% permanent disability and will in all probability require major medical treatment sometime in the future.
Therefore, Heymann clearly suffered the following special damages:
Medical expenses $1973.03
Motorcycle damage $3516.61
Towing fee $ 5.00
Total: $5524.64
The jury thus awarded Heymann only $6,475.36 for all other damages including past and future lost wages, future medical expenses, and pain and suffering. This award is clearly insufficient and we so hold. The record supports a finding that plaintiff was injured substantially and has suffered the effects of the injury. We feel that the award of $6,475.36 for the plaintiffs damages is definitely inadequate in view of the damages outlined above. In our review of awards in similar cases we are of the opinion that the total jury award here should be increased to $30,000.00, thus giving the plaintiff a sum of slightly less than $25,000.00 for pain and suffering and all other general damages including lost wages and future medical expenses.
Accordingly, the judgment of the trial court is affirmed in favor of Many Hey-mann and against Allstate Insurance Company, Inc., but is amended and increased to the sum of $30,000.00, together with legal interest thereon from date of judicial demand until paid, and for all costs of the proceedings. All costs of this appeal are assessed against the defendant, Allstate Insurance Co.
AFFIRMED AND AMENDED.