CURRAULT, Judge.
This appeal arises from a jury verdict in favor of plaintiff, Abraham Dahab, and against defendant, State Farm Mutual Automobile Insurance Company, for damages suffered in an automobile collision. We affirm in part, amend in part and render as amended.
The accident in question occurred on February 17,1983 when Abraham Dahab, operating the vehicle owned by D’Marks, Inc., was struck in the front end by the automobile owned and driven by defendant, Whitney Mathieu. Mr. Mathieu either passed out or blacked out and/or lost control of his vehicle at the corner of Behrman Highway and Carol Sue Avenue in Gretna, Louisiana.
Following the collision, plaintiff was taken to the emergency room at Meadowcrest Hospital where he was examined and sent home. Because of pain in his neck, lower back and right shoulder, Mr. Dahab went to bed where he remained for four to five days. Shortly thereafter on February 25, 1983, he became a patient of Dr. Charles Billings, an orthopedic surgeon who was still treating plaintiff at time of trial.
Dr. Billings’s first examination revealed spasms in plaintiff’s neck and lower back and it was determined that he suffered a strain to his cervical and lumbar spine regions from the accident. The ultimate di *1296 agnosis was degenerative disc disease secondary to trauma.
As a result of the injuries sustained by plaintiff, suit was filed on May 19, 1983 on behalf of Abraham Dahab and D’Marks, Inc. against Whitney Mathieu, his insurer Allstate Insurance Company and State Farm Mutual Automobile Insurance Company, plaintiffs uninsured/underinsured motorist insurance carrier.
On October 8, 1984, plaintiff signed a release and settlement in the amount of Ten Thousand Dollars ($10,000) as to defendants Whitney Mathieu and Allstate Insurance Company.
Jury trial of the matter against State Farm was held on December 17-18, 1984, during which time plaintiff was granted a directed verdict on liability and defendant was granted a directed verdict as to damages suffered by plaintiff, D’Marks, Inc.
Thereafter, the jury returned a verdict in favor of plaintiff in the amount of Seven Thousand Five Hundred Dollars ($7,500) for past, present and future medical expenses, but denied plaintiff’s claim for damages for past, present and future physical pain and suffering, disability and mental anguish. The award for medical expenses was in addition to the Ten Thousand Dollars ($10,000) which Abraham Dahab previously collected in settlement from Allstate Insurance Company, thus the total amount the jury determined plaintiff was entitled to was Seventeen Thousand Five Hundred Dollars ($17,500).
On January 24, 1985, an amended judgment allowed defendant State Farm a credit of One Thousand Five Hundred Forty-One Dollars and Fifteen Cents ($1,541.15) previously paid to plaintiff and stipulated to by the parties.
Thereafter, plaintiff perfected an appeal of the judgment alleging that the damage award was so low as to constitute an abuse of discretion by the trier of fact.
It is well established in Louisiana law that the standard of review by an appellate court of an award of damages is whether the trier of fact abused its “much discretion.” Only if an articulated analysis of the particular facts discloses an abuse of discretion may the award be considered insufficient or excessive. Reck v. Stevens, 373 So.2d 498 (La.1979); Arena v. Winn Dixie Louisiana, Inc., 441 So.2d 73 (La. App. 5th Cir.1983), writ denied 445 So.2d 1231 (La.1984); Heymann v. Allstate Ins. Co., Inc., 454 So.2d 860 (La.App. 5th Cir. 1984). Once a determination is made that the trier of fact abused its discretion, the court may resort to prior awards to determine what amount would be an appropriate award. Reck, supra; Bourgeois v. Bill Watson’s Investments, Inc., 458 So.2d 167 (La.App. 5th Cir.1984).
Appellant argues that the jury award of $7,500 over and above the $10,000 plaintiff previously received was an abuse of discretion considering the facts of this case.
On the other hand, appellee asserts that the plaintiff failed to prove his back condition was related to the accident. Further he asserts that the jury award was related only to a swelling or tissue prominence found on the top of appellant’s shoulder which the defendant’s physician causally connected to the accident.
The facts show that appellant suffered a cervical strain which healed within six months of the accident. However, the testimony of all the witnesses, lay and medical, indicates that he continues to suffer pain from his lower back. Dr. Billings, appellant’s treating physician, diagnosed appellant’s condition as degenerative cervical and lumbar disc disease secondary to trauma. He stated that the normal aging process involves a degeneration of joints and cartilages, including discs, but that normally the process is graceful and does not occasion pain or disability.
During the course of treatment, a CAT scan was performed which showed bulging at the two lower discs. In April and May, 1983, on two separate occasions due to appellant’s worsening complaints, appellant received three injections in the lower lumbar area. The injections only temporarily relieved the pain; and in August, 1983, appellant was advised to have invasive evaluation of the lumbar region by myelo- *1297 gram. Appellant had the procedure performed in May, 1984, which showed significant indentation or defect in the dye column consistent with disc protrusion. The myelogram procedure required a three-day stay in the hospital.
Dr. Billings testified that appellant’s future treatment options included the conservative non-operative method he was then receiving; surgery; weight control; and avoidance of re-injury. He assessed a 10-15 percent disability to the lumbar spine region, or restriction of motion at that level, with a disability to the body as a whole of 5-10 percent.
In regard to the surgery option, Dr. Billings stated that the surgery was declined by appellant at time of trial, a decision to which Dr. Billings agreed for the immediate future. However, he testified that if the conservative treatment failed, surgery would be appropriate. The doctor also testified that surgery would cost approximately Fifteen Hundred to Two Thousand Dollars ($l,500-$2,000) for the surgeon’s fee and Ten to Fifteen Thousand ($10,000 to $15,000) for the hospital bill; and that it would require ten days to two weeks’ hospitalization. Subsequently, the patient would suffer a six to twelve month restriction and recovery period.
Dr. James Williams, an orthopedic surgeon, examined appellant at defendant’s request on two occasions: in September, 1983 and November, 1984. His findings were essentially the same as Dr. Billings’s; however he determined that the narrowing of the L-4 and L-5 disc spaces were a result of arthritic degeneration of the discs unrelated to the accident. On direct examination, Dr. Williams insisted that an aggravation of the prior arthritic condition was not likely to be aggravated by the trauma. However on cross-examination he testified that aggravation was a possibility. The doctor did find, on the other hand, a prominence protruding over the top of appellant’s shoulder which he determined was a direct result of the accident.
Appellant, his wife and a manager of one of appellant’s clothing stores also testified. Appellant was the owner of several retail outlets and two grocery stores prior to the accident. He stated that the lower back injury continues to cause him pain when sitting, standing, bending or lifting. He indicated that immediately following the accident he was essentially bedridden for several days due to pain in his lower back, shoulder and neck. He stated that he declined to have the surgery on his lower back because of the long recuperative period projected by Dr. Billings. However, appellant stated that he intended having surgery in the future if the pain was not alleviated by conservative treatment.
While the injury to his neck has healed, the lower back problem caused him to reduce his social and business activities. As to his businesses, he stated he cannot contribute his time or physical effort to the selling portion of his duties in the stores. Whereas, prior to the accident, appellant attended six marketing shows a year in various states to purchase merchandise, since the accident he has been unable to attend more than one. Following the accident appellant sold some of his stores, retaining an interest in one and full ownership of another.
In regard to his recreational activities, appellant stated that he previously enjoyed tennis, softball, baseball and golf, but is no longer able to participate in those sports. Upon questioning on cross-examination, he noted that several months passed before he was able to have the myelogram performed because of his numerous business commitments relative to construction of stores in a shopping center. In that project, as in previous projects, he acted as general contractor, but did not physically participate in the construction of the project after the accident.
Appellant admitted that he suffered a sprained back in 1981, but asserted that after a few days in traction in the hospital, a full recovery was achieved. He explained further that he enrolled in college since the accident in an attempt to find a sedentary business career because of the problems he has experienced in running his businesses due to his back problems.
*1298 Kathy Dahab’s, appellant’s wife’s, testimony supported that of her husband. She stated he was in good health and physically active in business and in his hobbies prior to the accident. Since the accident, she testified that he is unable to stand for more than a few minutes at a time and that he cannot bend or lift as he was able to previously.
Mohammed Jaber, a manager of appellant’s store in Westside Shopping Center, D’Marks, testified that prior to the collision appellant worked at that store six days a week. Since the accident, Mr. Jaber stated appellant only comes into the store at the most once a week. While there, Mr. Jaber testified that appellant complains of pain when he attempts to stand or sit for long periods of time. Mr. Jaber, a long time associate of appellant’s, also testified that appellant no longer is involved in his favorite sports activities.
In reviewing the evidence herein, we find, contrary to appellee’s allegations, that the evidence supports a presumption that the jury determined that appellant suffered injuries to his lower back, neck and shoulder as a result of the accident. However, we find the jury abused its discretion in the award in that the injuries, particularly the lower back injury, caused him to suffer considerable pain resulting in an inability to enjoy his leisure activities, curtailed his business activities and will probably require surgery in the future. After reviewing awards under similar eases, we find the sum of Twenty-Five Thousand Dollars ($25,000) [including the $10,000 already received], the lowest amount which could reasonably compensate appellant for his injuries.
Therefore, after a review of the law and evidence, we hereby affirm the judgment as to liability and medical expenses awarded; but amend the judgment to include Seven Thousand Five Hundred Dollars ($7,500) for general damages, thereby raising the total recovery to Twenty-Five Thousand Dollars ($25,000).
Costs of this appeal are to be paid by appellee.
AFFIRMED IN PART; AMENDED IN PART AND RENDERED AS AMENDED.