506 So.2d 690 (1987)
James E. HILL, Individually and on Behalf of His Minor Daughter, Tracy Lynn Hill
v.
Shirley M. LAMULLE and State Farm Mutual Automobile Insurance Company.
No. 86-CA-504.
Court of Appeal of Louisiana, Fifth Circuit.
April 13, 1987.
*691 James E. Stovall, New Orleans, for plaintiff/appellant.
Glenn B. Adams, New Orleans, for defendants/appellees.
Before GAUDIN, KLIEBERT and WICKER, JJ.
WICKER, Judge.
This appeal arises from a suit on behalf of James E. Hill (Hill) individually and on behalf of his minor daughter, Tracy Lynn Hill (Tracy), plaintiffs/appellants, against defendants/appellees, Shirley M. Lamulle (Lamulle) and State Farm Mutual Automobile Insurance Company. Hill and Tracy sought damages for injuries allegedly sustained as the result of an automobile accident which occurred on September 1, 1983. The matter was tried before a jury which rendered a verdict on May 20, 1986 finding Lamulle to be 80% at fault and Hill to be 20% at fault. The jury awarded damages to Tracy in the amount of TWO HUNDRED FIFTY AND NO/100 ($250.00) DOLLARS for past, present and future pain, suffering, mental anguish and disability (general damages) and TWELVE HUNDRED AND NO/100 ($1,200.00) DOLLARS for medical expenses. Hill was awarded TEN THOUSAND AND NO/100 ($10,000.00) DOLLARS for past, present and future, suffering, mental anguish and disability and TEN THOUSAND AND NO/100 ($10,000.00) DOLLARS in special damages for medical expenses. On June 11, 1986 this judgment was made the judgment of the court. Hill now appeals individually and on behalf of his minor daughter, Tracy. We reverse in part and revise in part.
On September 1, 1983 Hill picked up his fourteen-year-old daughter, Tracy, at Stuart Preparatory School and proceeded *692 on North Arnoult Road toward West Metairie in Jefferson Parish. At the intersection of Elgin Street Lamulle stopped as directed by a traffic sign and then pulled into North Arnoult, which was the favored street. From this point on, both parties offer different versions of the accident which followed.
Hill testified that he saw Lamulle come to a stop at the stop sign. Hill then turned to look ahead. When Hill approached the intersection at Elgin Street proceeding 15 to 20 miles per hour, Lamulle's vehicle struck Hill's vehicle on the right passenger side of Hill's car.
Tracy, who was seated in the right passenger side of Hill's car, testified that she was unaware of the Lamulle vehicle until their car was struck on the right passenger side. The impact caused her to move over to her father's side of the car. Hill further testified that the impact caused his car to be knocked into the street into the second lane of the two-lane highway.
Both Hill and Tracy testified that there were no stop signs on the street on which they were travelling at the time of the incident. Lamulle did not refute this statement.
On the other hand, Lamulle testified that she came to a stop at Elgin Street; looked to her right and left and then pulled out going two or three miles per hour. She stated that the Hill vehicle struck her vehicle, pulling off the right bumper guard from her car. While she insisted that she did stop and look before proceeding, she also admitted to answering differently at her deposition which was taken on October 15, 1984 in which she stated previously that she could not truthfully answer whether she was looking for cars.
Following the accident Hill and Tracy appeared unhurt; however, both began experiencing pain and stiffness shortly thereafter. Both Hill and Tracy began treatment with Dr. David McClendon (McClendon) approximately two weeks after the accident. Hill was subsequently referred to a radiologist and a neurosurgeon.
Both Hill and Tracy began treatment approximately two weeks after the accident.
Hill and Tracy specify the following errors:
1. That the jury erred in finding Hill to be comparatively negligent;
2. That the trial court erred by failing to instruct the jury on the duties of a favored motorist;
3. That the jury was manifestly erroneous in awarding inadequate damages to Hill;
4. That the trial judge improperly instructed the jury on the law of damages;
5. That the jury was manifestly erroneous in its inadequate award of damages to Tracy;
6. That the trial court erred in failing to assess costs incurred at trial, and
7. That the trial judge erred in allowing insureds of State Farm Mutual Automobile Insurance Company to be impanelled on the jury.

PROPRIETARY INTEREST ON PART OF JURORS
Appellants contend that the trial court erred by allowing insureds of State Farm Mutual Automobile Company to serve on a jury in a case against that insurance company. The thrust of their argument is that an insured of a mutual insurance company has an indirect proprietary interest in the outcome of a trial against the same company and therefore such jurors should be subject to a "per se" challenge for cause without any necessity for showing that there is actual prejudice on their part.
During voir dire the trial judge questioned prospective jurors regarding any bias or prejudice by virtue of their being insureds of "State Farm." He made no distinction between State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company. Only the judge's questions are transcribed. There is no transcript made of counsel's questioning of these potential jurors on this issue, if any. The only objection recorded is a blanket objection made by counsel for appellants prior to resting their case-in-chief to those jurors who were insured *693 by State Farm Mutual Automobile Insurance Company.
Evidently the trial judge concluded after questioning these prospective jurors that they were free of any bias or prejudice. L.S.A.-C.C.P. Art. 1765. He must have further concluded that these jurors were not subject to a "per se" challenge for cause. We agree.
We find support for our position in the granting of writs by our Louisiana Supreme Court in Roques v. State Farm Insurance Company, 469 So.2d 254 (La. 1985), a case arising from this circuit. In Roques v. State Farm Insurance Company, No. 85-C-299 (La.App. 5th Cir. May 20, 1985) we found no abuse of discretion on the part of a trial judge who had excused prospective jurors for cause.
During the voir dire examination the trial judge granted plaintiff's motion to excuse 19 potential jurors solely on the basis that they carried insurance with either State Farm Mutual Automobile Insurance Company or State Farm Fire and Casualty Company. Although we denied writs, finding no abuse of the trial court's discretion, the Louisiana Supreme Court granted writs and reversed the trial judge. Roques v. State Farm Insurance Company, supra.
In its reversal of the trial court, the Louisiana Supreme Court held that "[t]here is no showing of grounds for challenge for cause under C.C.P. Art. 1765." Roques v. State Farm Insurance Company, supra.
Thus, counsel is incorrect in asserting that the Louisiana Supreme Court only ruled that insofar as a stock company such as State Farm Fire and Casualty Company is concerned, actual prejudice needs to be demonstrated since that court had before it the issue of "per se" challenges for cause for either a mutual company or a stock company and it made no distinction between the two. Roques v. State Farm Insurance Company, supra.
Counsel correctly notes, however, that the defendant insurer in Roques v. State Farm Insurance Company, supra was State Farm Fire and Casualty Company and not State Farm Mutual Automobile Insurance Company as in the instant case. Even assuming that Roques v. State Farm Insurance Company, supra stands for the proposition that when a stock company such as State Farm Fire and Casulaty Company is the defendant, a "per se" challenge for cause does not lie, we do not have information before us in the instant case to determine whether the challenged jurors were insureds of a stock company or a mutual company.
As noted previously, the trial judge did not specifically ask the jurors whether they were insured by State Farm Mutual Automobile Insurance Company. Accordingly, we cannot determine which jurors were insured by State Farm Mutual Automobile Insurance Company. Although counsel's blanket objection to those jurors who were insured by State Farm Mutual Automobile Insurance Company did highlight which insured individuals he was challenging, this distinction came at the close of his case-in-chief without the benefit of any testimony on voir dire indicating which jurors, if any were insured by State Farm Mutual Automobile Insurance Company. We also note that there was no stipulation by counsel that the challenged jurors were in fact insureds of State Farm Mutual Automobile Insurance Company. Therefore, there is nothing in the record to support counsel's objection.
Thus, even in construing the Louisiana Supreme Court to have made a distinction between the two companys, we conclude that the issue of whether an insured of a defendant mutual company is subject to a "per se" challenge for cause is not properly before us. We find that there is insufficient testimony in the voir dire to warrant this court holding that the trial judge erred in his ruling.
Accordingly, this specification of error lacks merit.

COMPARATIVE NEGLIGENCE
Hill contends that the jury was manifestly erroneous in finding him to be 20% comparatively negligent. He also asserts that the trial court erred by failing to instruct the jury on the duties of a favored motorist.
*694 In following the Louisiana jurisprudence we recently held that:
[t]his court, as a reviewing court, must give great weight to the factual findings and conclusions of the trier of fact, the jury, and where there is conflict in the testimony, the reasonable evaluations of credibility and the reasonable inferences of fact reached by a judge or jury shall not be disturbed. This rule must be followed even though the appellate court may feel that its own evaluations and inferences are just as (or more) reasonable. Baach v. Clark, 442 So.2d 514 (La.App. 5th Cir.1983), writ denied 447 So.2d 1067; Doss v. Hartford Fire Ins. Co., 448 So.2d 813 (La.App. 2nd Cir. 1984), writ denied 450 So.2d 359; Thomas v. Missouri-Pacific R. Co., 451 So.2d 1152 (La.App. 3rd Cir.1984); Canter v. Koehring, 283 So.2d 716 (La.1973). Jackson v. Hurst, 480 So.2d 487 (La.App. 5th Cir.1985) at 488.
Moreover, the finding of percentages of fault pursuant to L.S.A.-C.C. Article 2323 is a factual determination which will not be disturbed on appeal unless this finding is clearly wrong. Varnado v. Continental Ins. Co., 446 So.2d 1343 (La.App. 1st Cir.1984); Motton v. Travelers Ins. Co., 484 So.2d 816 (La.App. 1st Cir.1986). See also, Pizzaloto v. Hoover Co., 486 So.2d 124 (La.App. 5th Cir.1986) writ denied 488 So.2d 202 (La.1986).
Our Louisiana Supreme Court has recently explained the standard of appellate review in Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985) as follows:
a finding of fact by a trial court should be upheld `unless it is clearly wrong'... `appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court.' [Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978)]. Proper review requires that the appeal court determine from the record that the trial court finding is not clearly wrong or manifestly erroneous. Id. 469 So.2d at 972.
We conclude that the jury was clearly wrong in finding that Hill was 20% negligent. The jury evidently concluded that Hill was negligent in turning to look ahead of him after he had seen Lamulle stop her vehicle and in not continuing to pay attention to her from the time he saw her stopped until the point of impact.
Neither Lamulle, Hill, nor Tracy testified that he or she was aware of imminent impact. Therefore, even assuming that Hill had a duty to avoid turning to look ahead of him rather than to keep track of her stopped vehicle, there is no testimony that his failure to continue paying attention would have allowed him to avoid the accident by either stopping or swerving his car.
Furthermore, Hill and Tracy testified that the point of impact on the Hill vehicle was the right passenger side. The estimate of damages prepared by State Farm Mutual Insurance Company corroborates their statement that the Hill vehicle sustained damage on the right passenger side. Although Lamulle testified that her vehicle was struck on the right passenger side of her car, it is highly unlikely that her vehicle could have been struck on her right side and have also struck the Hill vehicle on its right passenger side.
Therefore, although arguably the jury could have found Lamulle's testimony regarding the point of impact to be the more credible one, we are not required pursuant to Watson, supra to sustain that determination when that finding is clearly wrong or manifestly erroneous. It is much more likely that the point of impact on the Hill vehicle was the right passenger side which would suggest that Lamulle struck the Hill vehicle while it was in the intersection, thereby not allowing Hill any opportunity to avoid the accident.
Having determined that the jury's allocation of 20% fault to Hill was clearly wrong and against the weight of the evidence, we must render a judgment "which is just, legal, and proper upon the record on appeal." L.S.A.-C.C.P. Article 2164. See, also, Watson, supra.
In Watson, supra, the Supreme Court delineated guidelines for apportioning fault *695 under the system of comparative negligence as follows:
`[i]n determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.' [Watson court quoting the Uniform Comparative Fault Act, Section 2(b) (1979).]
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. Watson, supra at 974.
As previously noted, the only action by Hill which could conceivably be a failure to exercise due care was his turning away and looking ahead of him after he saw Lamulle stop at the sign. The record is devoid of any evidence indicating that his conduct was inadvertent or involved an awareness by Hill of any danger at the time of the turning away. Moreover, his turning away was not associated with an increase in the risk of injury or an accident since the accident more likely occurred within the intersection and therefore there would have been no course of action for Hill to take to avoid the accident even had he continued to look in Lamulle's direction.
On the other hand, Lamulle admitted that she had a stop sign. Her conduct of proceeding into the intersection created a great risk to Hill. Furthermore, there were no extenuating factors which might have required Lamulle to proceed into the intersection without thought. Although she testified that she looked in both directions before proceeding and that she saw no cars, she also admitted that at an earlier deposition, she had stated that she could not truthfully say whether she had looked for cars. Since it is highly unlikely that she could have entered the intersection with no cars coming in either direction, it is much more likely that she could not say whether she had looked carefully, as she previously stated in her earlier deposition.
After consideration of the Watson factors we conclude that Hill was not at fault in this accident. We find that Lamulle was 100% at fault.
With regard to appellants' specification of error related to the trial judge's failure to charge the jury regarding the duty of the motorist on a favored street, we note that appellants' failure to comply with the requirements of L.S.A.-C.C.P. Article 1793(C) necessarily results in a forfeiture of the right to complain of any allegedly erroneous instruction on appeal. Lea v. Baumann Surgical Supplies Inc., 321 So.2d 844 (La.App. 1st Cir.1975), writ denied 325 So.2d 279 (La.1976).
L.S.A.-C.C.P. Article 1793(C) provides that:
[a] party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury. [Emphasis supplied.]
At the close of the evidence and out of the presence of the jury the following colloquy between the court and counsel for appellants appears in the record:
THE COURT: Let the record reflect that the jury is not present. We have had the jury charge conference. The court has refused to read the charges submitted by Mr. Stovall, [counsel for appellants] for which he raises objection.
MR. STOVALL: Yes, Your Honor. For the record, we have submitted jury charges numbered 1-27, and we object to *696 the court not reading those, and that is one through twenty-seven individually, namely, jury charge one, jury charge two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, eighteen, nineteen, twenty, twenty-one, twenty-two, twenty-three, twenty-four, twenty-five, twenty-six, and twenty-seven.
THE COURT: As a matter of fact, the court is going to read jury charge three, which is the duty of the stopping motorist. I will read that in conjunction with the definition of negligence. Mr. Adams.
As noted in Lea, supra L.S.A.-C.C.P. Article 1793 "requires that the litigant must not only object to each special charge which is refused, but must also state the grounds for each such objection." Id. 321 So.2d at 857. A blanket objection such as in the instant case fails to comply with the requirements of Article 1793. Lea, supra. Therefore we have no authority to address the contention that the trial judge erred by failing to give certain special jury instructions.
Accordingly, those specifications of error relative to the failure of the trial judge to properly instruct the jury on the duty of a favored motorist as well as on the law of damages lack merit.

QUANTUM
As noted previously, appellants urge as error the failure of the trial judge to give certain jury instructions relative to the law of damages. In particular, they cite the trial court's failure to instruct the jury on Hill's life expectancy. Additionally asserted as error is the failure to instruct on the recoverability of the value of the gratuitous services of a spouse and the failure to include "possibilities" of damage when coupled with other credible evidence. We previously noted that counsel's failure to comply with the requirements of L.S.A.-C.C.P. Article 1793(C) resulted in a forfeiture of the right to complain of a failure to give certain jury instructions. Lea, supra. Therefore, this specification of error lacks merit.
Hill further contends that the jury abused its discretion in only awarding $10,000.00 as general damages. We recently explained the test to be followed in determining the adequacy of a damage award in Gagnet v. Zummo, 487 So.2d 721 (La.App. 5th Cir.1986):
[i]n determining whether an award of damages is inadequate or excessive we must first inquire whether the jury's award for particular injuries and their effect upon the injured person was a clear abuse of the trier of fact's `much discretion.' On appellate review it is only after an articulated analysis of the facts discloses an abuse of discretion that an award may for stated reasons be considered either excessive or insufficient. Only after making a determination of abuse can an appellate court disturb the award and then only to the extent of lowering it or raising it to the highest (or lowest) point which is reasonably within the discretion afforded that judge or jury. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Bourgeois v. Bill Watson's Investment, Inc., 458 So.2d 167 (La.App. 5th Cir. 1984). Gagnet, supra [487 So.2d] at 723; See also Hull v. Schwegmann Brothers Giant Supermarkets, Inc. and XYZ Insurance Company, 480 So.2d 1069 (La. App. 5th Cir.1985) and Bivalacqua v. Aube, 493 So.2d 209 (La.App. 5th Cir. 1986).
The jury heard extensive medical testimony. Hill's expert witnesses were McClendon; Dr. Amilcar Correa (Correa), a neurosurgeon and Dr. Charles Aprill (Aprill), a radiologist. The expert who testified on behalf of Lamulle was Dr. Richard Warren Levy (Levy), a neurosurgeon.
McClendon, Hill's primary treating physician, testified that he treated Hill for a period of two and one-half years for back problems from September 14, 1983 through March, 1986. He further stated that he only treated Hill for neck problems from September 14, 1983 to January or February 1984 for approximately four or five months. His primary focus in treatment revolved around back problems.
*697 McClendon testified that it was more probable than not that Hill suffered Acute Lumbar Sacral Disc Herniation and compressed nerves in the neck caused by the accident of September 1, 1983. He explained that the herniation caused sciatica to radiate down into his right leg at L-5, S-1. However, he added that he did not rule out problems with L-4 and L-5. Although not as significant as the back complaints, he did find evidence of a cervical nerve outlet syndrome in the neck with compressed nerves.
He noted that a herniated disc is not a ruptured disc; rather it is a disc which bulges or "balloons out." When Hill continued to complain of pain despite conservative treatment, McClendon referred him to Correa for a second opinion.
Correa first examined Hill on December 11, 1984. Although he found no evidence of muscle spasm in the low back area, he did find tenderness when pressure was exerted over the L-5 vertebra. Thereafter, Correa ordered a bone scan on December 13, 1984 and a nerve conduction test on February 8, 1985. Both tests were normal.
After examining him on February 20, 1985 he concluded that Hill's pain arose from the soft tissue structures rather than nerve structures. He therefore referred him back to McClendon for continuation of treatment.
Correa saw Hill again on May 14, 1985. On that date he could find no objective findings to account for his complaints of low back pain. However, since Hill continued to complain of pain he recommended further testing with a Myelogram and a post-myelographic catscan. These invasive tests were done on July 1, 1985.
The lumber myelogram was within normal limits. However, the post-myelographic catscan was abnormal in showing a bulging at L4-5. Correa did not find enough evidence to justify surgery from those findings and referred Hill to Aprill for further testing.
Aprill saw Hill on August 23, 1985 for another invasive test, the discogram. He explained that this test is a diagnostic disc puncture and injection. He further concluded that the L4-5 disc was moderately degenerate in appearance and that this level was the primary symtomatic level. Aprill stated that it was impossible for him to diagnose the cause or the origin of these findings.
Correa commented on Aprill's results in testifying that he knew that L-5, S-1 was abnormal but that the abnormal narrowing of space in this area had probably nothing to do with the accident. After reviewing the data, he recommended conservative therapy for at least another month.
When Correa saw Hill in July, 1985 he continued to complain of pain; however, he was not ready for surgery. Correa described Hill's pain as being mostly an irritation of the nerve root arising out of the malfunctioning of the joint. While Correa testified that it was significant that Hill underwent two and one-half years of conservative treatment which had not corrected his symptoms, and that surgery is his only other choice, he also stated that surgery was no more than a possibility.
Levy testified that he had reviewed all of the medical reports except for a July 1985 catscan. He also found no evidence of a ruptured disc. However, he did find a mild bulge of the disc which did not touch the nerve roots, and which he considered to be a normal finding for someone Hill's age. He concluded that the bulge he noted was not enough to warrant surgery.
McClendon did not give an opinion about a disability evaluation; however, Correa testified that the maximum anatomical disability from one disc would be 15% if the patient was asymptomatic through treatment. Furthermore, Correa stated that if Hill elected to have surgery and his pain were eliminated he would still have a 15% anatomical disability.
On cross-examination, however, Correa explained that an anatomical rating does not mean that a person can or cannot do anything. Therefore, there was no medical testimony setting out the extent of a functional disability, if any, attributable to the September accident.
*698 As noted above, Hill's complaints of low back pain were confirmed by his experts. Hill also testified that prior to September 1, 1983 he had suffered with his back. However, he was asymptomatic prior to the accident and was performing his job as a mechanic. After the September accident, he had difficulty working due to stiffness and soreness. He stated that he now performs his work at a slower rate and is unable to bend or to pick up items. His wife testified that she has to aid him in dressing.
The jury evidently concluded that Hill received injuries related to the accident of September 1, 1983 since they awarded him $10,000.00 in general damages. See Dahab v. Mathieu, 478 So.2d 1294 (La.App. 5th Cir.1985). While the jury obviously found that his injuries did not warrant surgery, nor a functional disability, it nevertheless abused its discretion since $10,000.00 for injury which causes pain of two and one-half years, subjects the person to invasive procedures to determine the need for surgery, results in medical expenses of $10,000.00 and, causes pain of such severity that the person is unable to derive full benefit from conservative treatment is below the minimum for the injury sustained.
Having determined that the jury abused its discretion, we now turn to a determination of the proper award. In considering the circumstances of this case, an award of $25,000.00 is the lowest reasonable amount of general damages which the evidence will justify. Cf. Dahab, supra.
Tracy also contends that the jury erred in awarding her general damages of only $250.00. She testified that she had never suffered a neck injury prior to the accident. Although she had no complaints of pain the night of the incident, she was stiff on the following morning.
Approximately two weeks after the accident she saw McClendon, who treated her for approximately three to four months. She complained of headaches, stiffness and an inability to turn her neck. Although she did not miss school, she was unable to participate in physical education classes. She also had difficulty studying since she was unable to bend her neck.
McClendon was the only expert to testify regarding her injuries. He stated that Tracy suffered acute traumatic cervical strain and a mild lumbar sprain. He saw her from September 14, 1983 through January 6, 1984 for complaints which he believed were more probably than not caused by the September accident. He treated her actively for those complaints for a six-week period; the remainder of the time he saw her was for the purpose of follow-up visits.
He stated that she did not remain out of physical education classes during the entire time he saw her. He believed that she only stayed out of those classes for the first couple of weeks.
When asked about her prognosis he testified that he felt it was good. He concluded that she had recovered from the bulk of her symptoms. However, he noted that she may have complaints on an occasional basis from time to time.
As noted previously we adopt the test enunciated in Gagnet, supra in determining the adequacy of Tracy's damage award. See also Reck, infra; Coco, infra; Bourgeois, infra; Hull, infra; Bivalacqua, infra.
Since the jury awarded Tracy $250.00 in general damages it evidently concluded that she had received injuries which were caused by the accident. See Dahab, supra. However, we find that the jury abused its discretion since $250.00 for an injury which continues to cause occasional pain in the future; disrupts a student's functioning at school for at least a two week period; results in medical expenses of $1,200.00 and requires a six-week period of active treatment plus regular re-examinations for a total of three to four months of medical care is below the minimum for the injury sustained.
Having determined that the jury abused its discretion, we now turn to a determination of the proper award. After considering the circumstances of this case, an award of $3,500.00 is the lowest reasonable amount of general damages which the evidence will justify. Cf. Ensminger v. *699 McCormick, 489 So.2d 1316 (La.App. 1st Cir.1986) 493 So.2d 1219 and Butler v. Williams, et al., 428 So.2d 1156 (La.App. 5th Cir.1983.[1]

DEPOSITION TESTIMONY OF LAMULLE
Finally, appellants contend that the trial court erred in failing to tax as costs the deposition testimony of Lamulle. At trial a portion of Lamulle's deposition testimony was read into the record for purposes of impeachment, as previously noted. Counsel asserts that the cost of the deposition is allowable pursuant to L.S.A.-R.S. 13:4533. The statute provides:
[t]he costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs. [Emphasis supplied] L.S. A.-R.S. 13:4533.
However, Lamulle's deposition was not introduced into evidence. Our Louisiana Supreme Court has construed L.S.A.-R.S. 13:4533 in Succession of Franz, 242 La. 875, 139 So.2d 216 (La.1962) as follows:
As we now view the provision of the statute, we discern that the clause `costs of taking depositions and copies of acts used on the trial', being a separate and distinct clause, set off by commas from the other provisions of the Act, was essentially intended to render taxable only such depositions which were `used on the trial' as distinguished from the other items of costs enumeratedi.e., the costs of the clerk, sheriff and witness' fees, the recovery of which of course, bears no relation to their use on the trial. The single exception, and probably the only reasonable ground for departing from the statutory requirement as to depositions, was present in the Moody case [Succession of Moody, 229 La. 30, 85 So.2d 20 (La.1956)], that is, where the losing party has made compliance with the statute [L.S.A.-R.S. 13:4533] impossible by dismissal of the suit before the depositions can be used at the trial. Succession of Franz, supra 139 So.2d at 218-219.
Since the deposition was not introduced into evidence, it was not used on the trial. The trial judge did not abuse his discretion in finding that there had been no compliance with L.S.A.-R.S. 13:4533 so as to allow taxing as costs the Lamulle deposition. Succession of Franz, supra.
Accordingly, for the stated reasons, the judgment regarding the apportionment of liability is reversed. We decree Hill to be 0% at fault and Lamulle to be 100% at fault, and therefore Hill's awards of general damages and medical special damages are not reduced. With regard to quantum, the judgment in favor of plaintiff, James E. Hill and against defendants, Shirley Lamulle and State Farm Mutual Automobile Insurance Company, jointly and in solido is revised so as to award $25,000.00 for general damages to Hill. Furthermore, with regard to quantum, the judgment in favor of Tracy Lynn Hill and against defendants, Shirley Lamulle and State Farm Mutual Insurance Company, jointly and in solido is revised so as to award $3,500.00 for general damages to Tracy. The judgment is affirmed in all other respects. Costs to be paid by appellees.
REVERSED IN PART AND RENDERED REVISED IN PART AND AS REVISED, AFFIRMED.
KLIEBERT, J., dissents with written reasons.
*700 KLIEBERT, Judge, dissenting.
For the reasons which follow, I respectfully dissent from the majority opinion.
In oral argument counsel for plaintiff stated it was his recollection eight of the thirty-two panel members were State Farm Mutual Automobile Insurance Company policyholders and, despite his challenges for cause, four sat on the jury which heard the case. He further stated that of the four who sat on the jury, all of them responded in answer to a direct question that their being policyholders of State Farm Mutual Automobile Insurance Company would not affect their decision. Defense counsel stated that at least two and perhaps three of the jurors were State Farm Mutual Automobile Insurance policyholders and to the best of his recollection all had responded that being policyholders would not prejudice their decision. At the conclusion of the hearing this court ordered a transcript of the voir dire examination.
The transcript reveals that the following prospective jurors, when questioned by counsel for plaintiff, admitted they were State Farm policyholders:
(1) Miss Jeanne Allison
(2) Mr. Dennis Bodenheimer
(3) Mr. Douglas Johns
(4) Mrs. Jessie Montaldo
(5) Mrs. JoAnn Ligon
(6) Mr. Keith Guillot
(7) Miss Sharon Murray
(8) Mr. Michael Hansell
(9) Mrs. Shirley McKearan
and the trial judge addressed the prospective jurors en masse:
"... do any of you, who have State Farm Insurance, feel like they could not render a fair and impartial verdict because you feel like it would affect your insurance premiums?"
Counsel for plaintiff, along those lines, asked:
"Is there anyone, who doesn't believe [insurance people or companies] should be treated equally and fairly? ... has anyone seen any insurance advertisements over the past week that would in any way affect your ability to render a fair and impartial verdict, either the radio, newspaper, or any other medium."
The responses to all questions were apparently negative, as they were not recorded. Although the challenges to the individual jurors were conducted off the record, as noted previously, counsel for plaintiff went on the record "... to re-urge my objection to those members of the jury that are insured by State Farm Mutual Automobile Insurance Company." The court minutes reflect that counsel for plaintiff exercised peremptory challenges against Miss Allison and Mrs. Ligon. Mr. Guillot and Mrs. McKearan were likewise excused on challenges, although the record does not reflect who challenged them. Mrs. Montaldo was excused on a challenge for cause. Thus, three of the jurors who heard the case, i.e., Mr. Bodenheimer, Mr. Johns and Miss Murry, were State Farm policyholders, as was the alternate juror, Mr. Hansell. Since the challenge was to policyholders of the defendant State Farm Mutual Automobile Insurance Company, it is apparent that the attorneys and the court, when referring to "State Farm," meant the defendant State Farm Mutual Automobile Insurance Company rather than other State Farm companies which were not defendants.
Louisiana Code of Civil Procedure article 1765 provides in part:
"A juror may be challenged for cause based upon any of the following:
* * * * * *
(2) When the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial."
As we understand this provision, there are two bases for a challenge for cause: (1) when the juror states he is not impartial or (2) where there are circumstances from which it is presumed he would not be impartial.
The litigants cite none and we are unaware of any supreme court case which is decisive of the issue. It is noted, however, that in an application for supervisory writs stemming out of a ruling by this court that *701 there was a sufficient showing of bias to excuse jurors for cause, the supreme court, without discussing the issue, reversed the ruling of this court. See Roques v. State Farm Insurance Company, 469 So.2d 254 (La.1985). Chief Justice Dixon dissented, being of the opinion that bias was established by the mere showing the challenged jurors were policyholders of the defendant and that "all jurors insured by the defendants are subject to challenge for cause." As I see it, only State Farm Fire and Casualty Insurance Company was a defendant in the Roques case. Since the defendant in Roques was a stock company, i.e., a wholly owned subsidiary of State Farm Mutual Automobile Insurance Company, rather than a mutual company, as is the defendant here, I believe the majority decision in Roques is not decisive of the instant case.
Although state statutory law prevents a policyholder of a mutual insurance company from being assessed additional premiums for losses, when the company's losses are less than originally anticipated in setting the premium amounts, the policyholders benefit, for this results in a premium reduction. Thus, those jurors who were policyholders of State Farm Mutual Automobile Insurance Company had a direct pecuniary interest in the litigation. Admittedly, the financial gain to the individual fund member on a case-by-case basis is not substantial. Nevertheless, it is an interest and, given the ongoing public advertisement as to the correlation between the amount of damages and premiums, its effect can be dramatized by counsel's arguments to a jury. For these reasons and for those stated by the writer in a dissenting opinion in Gagnet v. Zummo, 487 So.2d 721 (5th Cir.1986) and by our brethren in the Fourth Circuit in Andry v. Cumis Insurance Society, Inc., 387 So.2d 1374 (4th Cir.1980), we believe the trial judge's refusal to recuse the defendant State Farm Mutual Automobile Insurance Company policyholders per se for cause was reversible error.
Having decided the judge erred in failing to grant plaintiff's challenge for cause as to policyholders of State Farm Mutual Automobile Insurance Company, I am confronted with the question of whether the case should be remanded for a jury trial or decided on the record by this court. For the reasons hereafter stated, I believe it should be remanded.
In Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975) the supreme court reaffirmed as consistent with appellate review of both law and fact the constitutional power of an appellate court to decide a case from the record when a jury verdict must be set aside because of erroneous jury instructions given by the trial court. Gonzales was modified by Ragas v. Argonaut Southwest Insurance Co., 388 So.2d 707, 708 (La.1980) wherein the court stated:
"[1] Where a finding of fact is interdicted because of some legal error implicit in the fact finding process or when a mistake of law forecloses any finding of fact, and where the record is otherwise complete, the appellate court should, if it can, render judgment on the record.
This is not to say, and Gonzales should not be read to require, that the appellate court must find its own facts in every such case."
As noted by Judge (now Justice) Cole in Nettles v. Bowlin, on rehearing 417 So.2d 1192 (La.App. 1st Cir.1982), cert. denied 422 So.2d 416 (La.1982), Gonzales does not deal with a situation where the jury is unfairly selected and, therefore, improperly constituted. Thus, the Nettles court, after determining the trial court erred in allowing the defendant more peremptory challenges than the plaintiff, remanded the case for a jury trial at which each side was to receive an equal number of peremptory challenges. See also Smith v. State Farm Insurance Company, 446 So.2d 1269 (La. App. 4th Cir.1984) writ denied 449 So.2d 1356, 1360 (La.1984).
The fundamental right to a jury trial is acknowledged in La.C.C.P. arts. 1731-1735 and is recognized by our courts. See Smith, supra, and cases cited therein. As noted in the dissents in Gonzales and Ragas, deciding a case on the appellate record deprives a litigant of a jury trial on a jury issue. Although we recognize that the *702 Gonzales rule is grounded on judicial economy and expediency, given the factual posture of this case, failure to remand for a new trial will deprive the plaintiffs of meaningful factual determinations by a competent, impartial jury and in effect deprive them of their statutory right to trial by jury.
For the reasons stated, contrary to the majority view, I would vacate the judgment and remand for a jury trial at which members of the defendant mutual insurance company are to be excluded from the jury when challenged for that cause.
NOTES
[1] In Butler, supra we found an abuse of discretion in the award of $1,000.00 to a person who had medical expenses of $535.00; four days' lost wages; bruised knee and cervical sprain which became asymptomatic in a few weeks, and lumbar sprain causing continuous pain for approximately four months. We concluded that the plaintiff should receive an amount slightly in excess of $4,000.00 for general damages. Butler, supra. Tracy, however, had no lost wages; nor did she miss school due to her injuries. Therefore, the facts in Butler, supra differ in this regard.

In Ensminger, supra the plaintiff suffered a moderately severe cervical sprain and a mildly severe lumbar sprain for which he received treatment for almost seven weeks for which he completely recovered. After finding an abuse of discretion, the Ensminger court awarded the plaintiff $3,000.00. In Tracey's case, she continues to have occasional pain.