568 So.2d 1146 (1990)
Herbert REESE
v.
James and Rose GRIFFITH, d/b/a Mary Poppins Apartments, et al.
No. 90-CA-212.
Court of Appeal of Louisiana, Fifth Circuit.
October 11, 1990.
*1147 Oestreicher, Whalen & Hackett, Robert L. Hackett, New Orleans, for Herbert Reese, plaintiff-appellant.
Hailey, McNamara, Hall, Larmann & Papale, John E. Unsworth, Jr., Metairie, for James and Rose Griffith and State Farm Fire & Cas. Co., defendants-appellees.
Before CHEHARDY, C.J., and GAUDIN and GRISBAUM, JJ.
CHEHARDY, Chief Judge.
Plaintiff, Herbert Reese, appeals a judgment rendered pursuant to a jury verdict which dismissed his claims against defendants, James and Rose Griffith, d/b/a Mary Poppins Apartments, and their insurer, State Farm Fire and Casualty Company (State Farm). The suit involved a slip and fall in an apartment complex parking lot belonging to the Griffiths.
On appeal, plaintiff asserts the trial judge erred in allowing a "last minute" witness to testify on behalf of the defendants when the witness was not listed on the pre-trial order and was not deposed by plaintiff, whose opinion was based solely on medical records, and whose testimony was damaging to plaintiff's case. In addition, plaintiff requests this court to render a judgment on the record in his favor as to liability and to award him damages in the amount of $300,000.
On Sunday evening, January 13, 1985, plaintiff and his wife made a sales presentation for Rena-Ware, plaintiff's employer, to Guillermo and Claudia Estrella, tenants of the defendants James and Rose Griffith. Plaintiff was a salesman and sales manager for the company, which promoted sales of cooking pots and pans through home presentations. He and his wife are originally from Honduras and El Salvador respectively.
Following the sales demonstration, the Estrellas agreed to purchase the cookware. Plaintiff then left the apartment to retrieve gifts from his car to give the Estrellas, as was customary when a customer made a purchase. It was dark at the time and had been raining.
As plaintiff walked to his car, which was parked in a space near the Estrellas apartment, he tripped over a planter and fell to the ground. The planter was made of dark, wood, railroad ties standing approximately eight inches high. After a few minutes he returned to the apartment where it was determined his arm was injured and possibly broken. His wife then telephoned their daughter who arranged to meet and escort them to Ochsner Foundation Hospital (Ochsner) emergency room.
The emergency room personnel treated plaintiff's arm injury as a suspected fracture to the elbow, but did not place it in a cast. Instead his arm was put in a long arm splint and sling, and he was then released. Because of his lack of insurance, he received follow-up care at Charity Hospital in New Orleans.
Plaintiff subsequently began experiencing discomfort in his neck and lower back, as well as continued discomfort in his arm. From the date of the accident until trial he was seen and treated by several doctors and received numerous physical therapy treatments. Plaintiff was initially diagnosed as having suffered a cervical and lumbar sprain, and his arm remained tender. He was later diagnosed by one of *1148 the physicians as having a herniated cervical disc. Two years after the incident, plaintiff was diagnosed and operated on for a subdural hematoma of the brain.
As a result of his injuries, on April 25, 1985 plaintiff filed suit against the defendants. In September the trial judge issued a pre-trial order. Plaintiff complied with the order and subsequently amended it several times. No response was filed by defendants.
In April 1989, the case was transferred to another judge who did not issue a new pre-trial order. Plaintiff again revised his response, but defendants continued to ignore the original order.
On June 26, 27, 28 and 29, 1989 the case went to trial before a jury. Prior to a verdict, plaintiff dismissed the Griffiths, leaving State Farm as the sole defendant. Following the trial, the jury returned a verdict finding the Griffiths were not at fault.
On appeal, plaintiff first complains his case was unduly prejudiced by the trial judge's refusal to exclude the testimony of defendants' medical witness, Dr. Donald Adams, a neurologist. In this respect plaintiff contends Dr. Adams was not listed on pre-trial inserts, as required by the pre-trial order and that he was prejudiced thereby because Dr. Adams' testimony was contrary to the other medical testimony, and because Dr. Adams' testimony was so damaging it affected the no-fault finding by the jury. Plaintiff cites LSA-C.C.P. art. 1551 pertaining to pre-trial conferences which states, inter alia, that a pre-trial order issued by the trial judge controls the proceedings unless "modified at trial to prevent manifest injustice."
In response, defendant State Farm contends plaintiff was notified by letter dated May 14, 1989 that the defendants (the Griffiths and State Farm) intended to use Dr. Adams at trial and that Dr. Adams' report was delivered to plaintiff's counsel on June 14, 1989. It also asserts the doctor was available for deposition and, in fact, plaintiff scheduled and then cancelled Dr. Adams' deposition the Friday before trial due to plaintiff counsel's scheduling problems. Finally, defendant points out the doctor was called to testify by plaintiff's counselnot State Farm or the Griffiths.
The trial judge refused to exclude the doctor's testimony because he determined plaintiff was informed of the defendants' intent and was given ample opportunity to depose Dr. Adams. He noted plaintiff scheduled and cancelled the deposition and concluded there was no violation of a court rule and/or pre-trial order that would prejudice plaintiff's case.
Under C.C.P. art. 1551 the pre-trial order controls the subsequent cause of the action. However, the trial judge has discretion to modify the order to prevent substantial injustice to the parties who have relied on the pre-trial rulings and structured their cases accordingly. C.C.P. art. 1551; Creppel v. Louisiana Power and Light Co., 514 So.2d 239 (La.App. 5 Cir. 1987), writ denied 516 So.2d 131 (La.1987); Gilcrease v. Gilcrease, 438 So.2d 658 (La. App. 2 Cir.1983), writ denied, 442 So.2d 461 (La.1983).
In this case the record reflects defendants failed to comply with the pre-trial order issued by the original trial judge assigned to the case. On the other hand, plaintiff's counsel admitted he knew of defendants' intent to call Dr. Adams in time to schedule Dr. Adams' deposition and that he then cancelled it for his own reasons. We also note plaintiff, not defendants, called Dr. Adams to the stand in lieu of waiting to hear his testimony and examining him on cross-examination.
As to Dr. Adams' testimony, we find nothing in the testimony that would indicate the jury's decision as to liability was somehow influenced by the medical testimony presented by this physician. Dr. Adams' testimony, while emphatic, related solely to plaintiff's injuries wherein he expressed his disbelief that plaintiff suffered or was suffering from a herniated disc or any other residual neck or back injury that was causally related to the accident. Notably he simply reviewed records and had never examined plaintiff, as opposed to several other doctors who treated plaintiff. *1149 This fact was pointed out to the jury and was presumably considered in weighing his testimony against three other physicians who causally connected his neck, arm and back problems to the fall.
Under these circumstances, it is our opinion that plaintiff did not suffer any prejudice or injustice in the trial judge's decision to allow Dr. Adams to testify. Consequently, we find the trial judge did not abuse his discretion in modifying the pre-trial order.
Plaintiff next contends the court should reverse the jury finding of no liability. He further asserts this court should award damages based on the record and evidence in the amount of $300,000.
In regard to liability, plaintiff asserts the Griffiths were negligent in allowing a dangerous condition to exist which could have been easily corrected. He states the eight-inch high, dark-colored wood planter was an obstacle which could not be seen at night, especially in rainy weather because the parking lot was unlighted. Plaintiff points out a light system existed which was attached to the outside wall of the complex, but which was connected to a vacant apartment, the connection of which should have been changed so it was not dependent on occupancy of the apartment. Plaintiff asserts defendants James and Rose Griffith could have easily remedied the defect caused by the poor illumination combined with the dark obstacles, but refused to do so for no valid or justifiable reason.
The evidence herein as to liability was presented by plaintiff, his wife, the Estrellas and defendant James Griffith. The Reeses and Estrellas, Spanish-speaking residents of this area, were assisted in their testimony by interpreters due to their uncertainty in the use of the English language.
James Griffith admitted that the area was not lighted at the time of the accident. He stated no lights were on outside because the available outside light source was connected to one of the apartments which was vacant. He stated he did not change the connection because outside lights were not required for four-plex apartments by the parish code. He also stated there was a street light nearby for illumination located 45 to 60 feet from the Estrella's apartment, but could not say with certainty that it was on that night. Griffith also contended Guillermo Estrella may have complained about the lack of lights, but thought he did so after this accident.
The first witness on plaintiff's behalf was Claudia Estrella. She stated plaintiff left the apartment after concluding the purchase in order to retrieve gifts for her and Mr. Estrella from his car. She said when plaintiff failed to return in a reasonable time she looked out her window. Although it was dark, she stated she saw plaintiff attempting to rise where he had fallen between his car bumper and the planter. After a few minutes, she stated, he returned to the apartment. Claudia Estrella noted plaintiff's face was soiled, he was supporting his arm and his arm appeared to be dislocated. She claimed he was not carrying his suitcases containing the cookware when he went outside.
On cross-examination, Mrs. Estrella was challenged regarding her testimony in her previously-taken deposition. There she asserted she went outside to help plaintiff. At trial she said she not remember if she went outside or not. Mrs. Estrella also stated her outside door and living room lights were on at the time.
Mr. Estrella also testified plaintiff left the apartment to get the post-purchase gifts. He, however, stated he and his father (who was also in attendance at some point) went outside to help plaintiff when they discovered plaintiff had fallen. He said he helped plaintiff get up and "fixed" the arm so it was the "right way". He said plaintiff was carrying something when he left, and that he (Estrella) helped him put his things in the car afterward. Estrella also said it was dark and added he had frequently complained about the lack of light to Griffith.
Estrella asserted he and plaintiff were not friends and that they met only that time and at trial. On cross-examination he said he was not certain whether the car *1150 trunk was open or closed. He was also challenged as to his deposition on several points. In his deposition he said he thought the trunk was open, that the car was parked in an adjacent spot and that he found plaintiff by the back bumper of the car.
Mariam Reese, plaintiff's wife, testified next. She supported Mrs. Estrella's version of the events of the night of the accident.
In his testimony, plaintiff stated he and his wife arrived at the Estrellas' while it was still light, but that it was raining or drizzling. He contended it was dark when he left the apartment and because of the weather, he took a short-cut across the planter to the front of his car. He stated he did not see the planter at that time.
Reese testified he fell between the planter and the front of his car, hurting his arm in the fall. When plaintiff returned to the apartment, he stated, the Estrellas assisted him in removing his jacket and put his arm in place since the elbow bone was "sticking out". He said his wife then called their daughter to meet them to escort him to the hospital and that they then left the Estrellas' home.
In order to find a defendant negligent under LSA-C.C. art. 2315, a duty risk analysis must be employed which requires an examination of four factors: (1) whether the defendant's conduct was a cause in fact of the harm, (2) whether the defendant owed a legal duty to plaintiff which encompassed the particular risk of harm to which the plaintiff was exposed, (3) whether the defendant breached its duty to the plaintiff, and (4) whether and to what extent, if any, the plaintiff was damaged by the defendant's breach of that duty. Forest v. State, Thru Louisiana D. of Transp., 493 So.2d 563 (La.1986).
In regard to property owners, the law further provides that an owner of property has a duty to discover any unreasonably dangerous condition on his premises and either correct it or warn potential victims. Paul v. Commercial Union Ins. Co., 535 So.2d 1319 (La.App. 5 Cir.1988). In this regard he is not an insurer against accidents, but must act reasonably in view of the probability of injuries to others. Paul v. Commercial Union Ins. Co., id. This duty does not give rise to liability for injuries, however, if the danger should have been observed by the plaintiff in the exercise of reasonable care, or if it was as obvious to the individual as to the owner (or occupier) of the property. Paul v. Commercial Union Ins. Co., id.
In determining whether any negligence on the part of defendant is actionable, the negligence must be both a cause in fact and the legal cause of the injury. Alford v. Estate of Zanca, 552 So.2d 7 (La.App. 5 Cir.1989). Legal cause means there must be a proximate relation between defendant's act and the harm. Alford v. Estate of Zanca, id. Cause-in-fact is found where the acts of defendant were a substantial factor in the injury, without which the accident would not have occurred. Miguez v. Urban Developments, Inc., 451 So.2d 614 (La.App. 5 Cir.1984).
In this case, plaintiff tripped and fell over a dark colored obstacle eight inches high protruding into the dark parking lot between the parking spaces. It also shows a light system was available in that it was attached to the outside wall nearly directly over the area in question, but was not working because it was connected to a particular vacant apartment.
A trial court's factual findings are given great weight and should not be disturbed in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, we find an unlighted parking lot with dark wood objects protruding into and alongside parking spaces creates an unreasonable risk of harm to those attempting to get in and out of their cars. Further, we find the Griffiths breached their duty to the plaintiff since they knew of the hazard and refused to correct it, although it would not have required a major effort to do so, thereby constituting negligence on their part. The question then is whether that negligence was the sole or partial legal and factual cause of the plaintiff's injuries.
*1151 In regard to plaintiff's conduct, he admitted attempting to take a short-cut over the planter to his car because of the inclement weather. In addition, the credibility of the witnesses was somewhat impeached by their inconsistent, and in the case of Mr. Estrella, contradictory testimony. As a result, the jury may have believed that the accident was caused, legally and factually, through the plaintiff's own fault. After our review we find no manifest error in the jury's finding.
Accordingly, the judgment of the trial court is hereby affirmed.
Appellant is to pay all costs of this appeal.
AFFIRMED.