635 So.2d 1209 (1994)
Dwayne FISHER, Sr., Individually and on Behalf of His Minor Child, Dwayne Fisher, Jr., and Desiree Allen Fisher
v.
RIVER OAKS, LTD., a Louisiana Limited Partnership, Ellis Management Company, Mary Cantrell, Charles Gravois, Geraldine Williams Gravois, James M. Gravois, Rosemary Bechnel Gravois, O.J. Gravois, Jr., Jane Schexnaydre Gravois, Louisiana Farm Bureau Mutual Insurance Company and State Farm Fire & Casualty Company.
No. 93-CA-677.
Court of Appeal of Louisiana, Fifth Circuit.
March 16, 1994.
Writ Denied June 3, 1994.
*1211 Perry J. Roussel, Jr., Gerolyn P. Roussel, LaPlace, for plaintiff's-appellants Dwayne *1212 Fisher, Sr., Individually and on Behalf of His Minor Child, Dwayne Fisher, Jr., and Desiree Allen Fisher.
Thomas G. Buck, Metairie, for defendants-appellee.
James S. Thompson, Dan Richard Dorsey, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendant-appellee LA Farm Bureau Mut. Ins. Co.
Before KLIEBERT, C.J., and BOWES and CANNELLA, JJ.
CANNELLA, Judge.
Plaintiffs appeal from a judgment dismissing their suit for personal injuries to their minor child, who fell from an apartment window. We affirm.
Plaintiffs are Dwayne Fisher, Sr., individually and on behalf of his minor child, Dwayne Fisher, Jr., and Desiree Fisher, the child's mother. Defendants are River Oaks, LTD (River Oaks), owner of the apartment complex, Ellis Management Company (Ellis), the apartment management company, Mary Cantrell, the Ellis manager, Charles Gravois, Geraldine Gravois, James Gravois, Rosemary Gravois, O.J. Gravois, Jr. and Jane Gravois, receivers for the property, Louisiana Farm Bureau Mutual Insurance Company and State Farm Fire and Casualty Company.
On February 28, 1990, plaintiffs moved into apartment C-2 of the River Oaks Apartments located in LaPlace, Louisiana. Two days before, Mrs. Fisher had placed fumigating "bombs" in the apartment to rid it of possible bugs, even though the apartment was cleaned when the last tenant moved out. At approximately 4:30 p.m., after entering the apartment to begin moving in, she opened all the windows since the chemical fumes were still strong. The apartment was two stories in height.
Accompanying Mr. and Mrs. Fisher were their two year old son and two former neighbor children, ages seven and nine. Mrs. Fisher put the children in an upstairs bedroom to play while she and Mr. Fisher completed the move. The upstairs bedroom had a window and screen with the sill located approximately fourteen inches from the floor. On the outside of the window, the sill was eleven feet from the ground.
After the children had been in the upstairs bedroom for approximately ten to fifteen minutes, one of the neighbor children came to the head of the stairs and told the Fishers that the baby had fallen out of the window. Both parents rushed outside to the child, who was on the concrete sidewalk, bleeding profusely and crying. The child was taken to the River Parishes Hospital emergency room where they determined that his baby teeth were jammed into his gums and an x-ray showed a hairline fracture of his cheek. The child was then sent to Children's Hospital in New Orleans where he was seen by an oral surgeon. A C-T scan produced negative results and the x-rays taken at Children's Hospital failed to show the cheek hairline fracture.
On November 14, 1990, plaintiffs sued for damages. The case was tried before a jury on October 19, 20 and 21, 1992. Following trial, the jury returned a verdict of no liability on the part of any defendant. The jury verdict was reduced to a judgment dated March 4, 1993. Plaintiffs appeal from that judgment.
On appeal, plaintiffs assert ten specifications of error. These errors relate to evidentiary rulings (8 and 9), jury instructions (7), the finding of no liability of defendants (1, 2, 3, 10), the directed verdict on the issue of the parents right to recover individually (4), the denial of a motion for new trial for prejudicial comments made by Cantrell in the presence of the jury while the attorneys and judge were out of the courtroom (5), and the denial of a motion for new trial based on defendants' illegal striking of black jurors (6).

EVIDENTIARY RULINGS
Plaintiffs assert that the trial judge erred in not allowing them to produce evidence *1213 concerning the condition of other window screens and general problems with maintenance at the apartment complex. The trial judge ruled that the evidence was not relevant. In particular, plaintiffs refer to photographs allegedly depicting a lack of maintenance and the testimony of another tenant as to the maintenance at the complex and the condition of the window screens in other units. Plaintiffs assert that this was error because it would tend to prove that the apartment complex was not properly maintained and that there were problems with window screens. Since the evidence "explains a relevant fact" or "supports an inference", plaintiffs assert that it is admissible evidence, citing State v. Ludwig, 423 So.2d 1073 (La.1982).
La.C.E. Art. 402 provides that all relevant evidence is admissible. La.C.E. Art. 401 defines relevant evidence as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. In determining the relevancy of the evidence, the trial judge has wide discretion and the trial judge's ruling will not be disturbed in the absence of a clear showing of abuse of discretion. State v. Kahey, 436 So.2d 475 (La.1983).
In this case, the trial judge permitted plaintiffs to elicit testimony regarding the condition of other window screens in the complex on the day after the accident. She sustained objections to the evidence of the condition of the complex more remote in time. After review, we do not find that the trial judge abused her discretion in sustaining the objections to the evidence on the basis of relevancy, since the evidence of the condition of the complex on the day after the incident was allowed and later photographs and testimony of later maintenance do not make the existence of the fact sought to be proved more or less probable. Therefore, we do not find that the trial judge erred in excluding evidence of the condition of other window screens and general maintenance problems.

JURY INSTRUCTIONS
Plaintiffs assert that the trial judge erred in refusing to give one of their jury instructions. Said instruction was:
"Right to Recover
A tenant or member of his/her family who sustains injury caused by defects in the leased premises is entitled to recover damages from the lessor. To recover, the tenant need only establish by a preponderance of the evidence that the injuries were proximately caused by the defective condition in the leased premises. Also, the tenant's right to recover does not depend upon the fault or negligence of the lessor."
The trial judge is not required to give the precise instructions submitted by either party. Jones v. Liberty Mut. Ins. Co., 568 So.2d 1091, 1094 (La.App. 5th Cir.1990). The trial judge must only give instructions which properly reflect the law which is applicable to the facts of a particular case. Jones v. Liberty Mutual, at 1094. Adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. Jones v. Liberty Mutual at 1094. The adequacy of jury instructions must be determined in light of the instructions as a whole and the manifest error standard of review may not be ignored unless the instructions were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and the facts. Jones v. Liberty Mutual at 1094.
In this case, the trial judge instructed the jury generally on the issues of strict liability and negligence. Her instructions also related to the duties and liabilities of a lessor. The charges, as a whole, instructed the jury properly on the law and how the jury was to apply the law to the facts. Consequently, we find that the trial judge did not err in refusing to give the charge submitted by plaintiffs.

LIABILITY
The next specification of error concerns whether comments made by counsel *1214 for defendants during direct and cross-examination constituted judicial admissions that the condition of the window and screen was unreasonably dangerous and thus liability was admitted.
La.C.C. art. 1853 states:
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
To constitute a judicial confession, the statement must be an express acknowledgement of an adverse fact. Jones v. Gillen, 564 So.2d 1274, (La.App. 5th Cir.1990), 1279. The effect is to waive evidence as to the subject matter of the admission or to withdraw the matter from issue. Jones v. Gillen, at 1279. However, in order for these effects to be imposed, the other party must have detrimentally relied on the statement or was led to believe that the fact was not at issue. Jones v. Gillen, at 1279. Otherwise, the party is permitted to withdraw the statement. Jones v. Gillen, at 1279.
In this case, the statements referred to by plaintiffs did not admit that the condition was unreasonably dangerous. Thus, there is no express acknowledgement. Furthermore, there is no evidence that plaintiffs detrimentally relied on the "admission", since the issue of whether there was a defect was hotly contested throughout the trial. Even if there were an admission, defendants have since withdrawn it. Consequently, we find that defendants did not make a judicial admission concerning the unreasonably dangerous condition of the window and screen.
Plaintiffs next assert that, based on the law and the evidence, the jury was manifestly erroneous in finding that defendants were not liable to them. Plaintiffs claim that the child fell from the window when he pushed against the ill-fitting screen, which presented a false sense of security to the child. Plaintiffs contend, through their safety expert, Dennis Howard, that the height of the window, coupled with the ill-fitting screen, was inherently dangerous for an apartment which foreseeably would have children living in it. They also assert that defendants' expert did not state that the window was safe, only that it was a type commonly used in construction. Plaintiffs contend, as well, that defendants' counsel admitted that this was a dangerous situation throughout the trial and that the agent, Cantrell, knew that the screens did not fit and were commonly found on the ground outside the apartment units. Thus, plaintiffs argue that they met their burden of proving that a defect existed which caused the injury to the child, that the danger was foreseeable and that defendants knew or should have known of the risk of harm.
In an action under La.C.C. art. 2315, the court must employ a duty-risk analysis to determine whether or not defendant is negligent. This analysis requires an examination of four factors:
1. Whether defendant's conduct was a cause in-fact of the harm; and
2. Whether defendant owed a legal duty to plaintiff which encompassed the particular risk of harm to which plaintiff was exposed; and
3. Whether defendant breached its duty to plaintiff; and
4. Whether and to what extent, if any, plaintiff was damaged by defendant's breach of that duty.
Reese v. Griffith, 568 So.2d 1146, 1150 (La. App. 5th Cir.1990).
In the first factor, the trier must find that defendant's negligence was both a cause in fact and the legal cause of the injury. Reese at 1150. For there to be legal cause, there must be a proximate relation between the harm and the act of defendant. Reese at 1150. Cause in-fact is found when the acts or conduct of defendant were a substantial factor in the injury and the accident would not have occurred without those acts. Reese at 1150. Furthermore, it must *1215 be shown that defendant had actual or constructive knowledge of the risk of harm. Blanchard v. Republic Ins. Group, 576 So.2d 1226 (La.App. 5th Cir.1991). The second factor involves a determination of whether defendant had a duty to protect the injured plaintiff from the risk of harm. The risk of harm must be unreasonable and, if the duty is found, the fact-finder must then address the third factor to determine if defendant breached that duty. If defendant is found to have breached a duty to protect plaintiff from the risk of harm, then the fourth factor comes into play, whether and to what extent the breach of that duty caused the injury to plaintiff.
In a strict liability determination, plaintiff must prove that, 1) the thing which caused the damage was in the custody and control of defendant, and (2) that the thing contained a "defect", and (3) that the defect caused plaintiff's injuries. Jones v. Gillen, at 1281. The defect is something about the thing that created an unreasonable risk of harm. Oster v. Dept. of Transp. & Development, 582 So.2d 1285, 1288 (La.1991).
In essence, the only difference between the negligence theory and strict liability is that plaintiff is not required to prove that defendant knew or should have known of the existence of the defect. Oster at 1288. "Under both theories, the absence of an unreasonably dangerous condition of the thing implies the absence of a duty on the part of the defendant." Oster at 1288.
In determining whether a thing creates an unreasonable risk of harm, the court must balance the likelihood and magnitude of the harm against the utility of the thing. Oster at 1289. In addition, the trier of fact should also consider a broad range of social, economic, and moral factors including defendant's cost of avoiding the risk and the social utility of plaintiff's conduct at the time of the accident. Oster at 1289.
In this case, the evidence shows that the child somehow fell out of the window, which was approximately fourteen inches above the floor. The child was thirty-six inches tall. Although the evidence indicated that the screen may not have fit the frame of the window tightly, there was no evidence presented by plaintiff as to how the child fell, even though there were two other children who witnessed the accident.
Plaintiffs' safety expert testified that the height of the window and the ill-fitting screen was a dangerous condition for children. He stated that the screen presented a false sense of security to children, who might expect the screen to prevent them from falling, if they leaned or pushed on it.
Defendant's expert, Lawrence Dwyer, an architect, testified that the type of window is commonly used in residential construction and that the height of the window is not considered a danger. He also pointed out that there are no building regulations that require the window be placed a minimum height from the floor or which place other requirements on screens. He stated that the only building ordinances which refer to windows prohibit bars that would impede exit in case of fire. Dwyer testified that screens are designed solely to keep out bugs and birds and are not designed to prevent people from falling out of windows.
In reviewing the factual findings of a trial court, the appellate court is limited to a review for manifest error. The court of appeal may not set aside or modify a jury's findings of fact unless it is clearly wrong. Stobart v. State Through DOTD, 617 So.2d 880, 882 (La.1993). In this respect the appellate court must resolve the question by determining whether the jury's findings were reasonable in light of the record reviewed in its entirety. Stobart at 882.
In this case, we have reviewed the record in its entirety and do not find manifest error in the jury's determination that defendants are not liable for the child's injuries. The jury was presented with credible evidence that the window height and loosely fitting window screen do not create an unreasonable *1216 risk of harm. It considered the factors set forth in Oster, and its decision was reasonable in light of that evidence. Thus, we find no error in the jury verdict and the trial judge not err in dismissing plaintiffs' case.

DAMAGES
We have determined that the jury did not err in finding no liability on the part of defendants. Consequently, the issues presented by plaintiffs relative to the directed verdict rendered against them for their individual damages and the issue of damages for the child are moot.

NEW TRIALILLEGAL RACIAL CHALLENGES BY DEFENDANT IN VOIR DIRE
Plaintiffs assert that a new trial should have been granted because defendants illegally struck blacks from the jury during voir dire. Defendants contend that the strikes were either for cause or because of a justifiable reason.
The record shows that the jury was composed of ten white jurors and two black jurors. The alternate juror was white. Defendants used their peremptory challenges to excuse three black males, one black female and one white male. Defendants also requested that two black females be challenged for cause. The record reflects that plaintiffs struck six white males from the jury. The record does not indicate the composition of the overall jury venire.
Defendants contend in the hearing on the motion for new trial and on appeal that the peremptory challenges were made because those potential jurors expressed views on child-raising adverse to their case, lived out of the parish, were related to the judge or appeared uneducated and uninterested. Notably, one of the peremptory challenges was directed to a white male. Defendants argue that plaintiffs refer to the jurors challenged for cause, but those challenges cannot be held against defendants.
After our review of the record, we find no merit to this specification of error. Defendants presented justifiable reasons for their peremptory challenges and their challenges for cause were found by the trial judge to be warranted. Consequently, we find that the trial judge did not err in denying the motion for new trial on this basis.

PREJUDICIAL COMMENTS
In the final specification of error of plaintiffs, they contend that the trial judge erred in failing to grant a new trial because the jury was unduly swayed by comments made by Cantrell, while the attorneys and judge were in chambers. Plaintiffs contend that, after closing arguments but before the jury was charged, the trial judge and all counsel went into the judge's chambers to discuss jury interrogatories. Shortly after, Cantrell's counsel returned to speak with her. At that time, Cantrell remarked "I think they're out to get me." to her counsel in a voice that could be heard by the jury, at which point the jury started laughing. Following that statement, the attorney went back into the judge's chambers and Cantrell, facing the jury, said in a loud voice, "I think they're out to get me because they are the attorneys for Lorita Peterson, the witness for them, and they lost her case. So they pulled them two in to get me."[1] Plaintiffs assert that afterward, the jury looked at plaintiffs and began talking to each other. Plaintiffs claim that the alternate juror, who was sitting on the last row, admitted to hearing these comments.
Plaintiffs argue that the comments were highly prejudicial to both plaintiffs and the attorneys who represented plaintiffs. They claim that Cantrell made the comments specifically to influence the jury and that her conduct is a basis for reversing the judgment.
*1217 These alleged statements were made outside of the record. However, the trial court was asked to admonish the jury when it was brought to her attention that improper comments were made in the jury's hearing. The request to admonish was made by the attorney for plaintiffs. The trial judge then admonished the jury to disregard the remarks and to render its decision without consideration of the comments. Plaintiffs did not ask for a mistrial or make an objection to the sufficiency of the admonishment. Consequently they have waived any complaints to the remarks made by Cantrell in the hearing of the jury.
Furthermore, our review of the trial judge's admonition appear sufficient to have cured any problem that might have resulted from Cantrell's statements and as we have already noted, the facts of the case support the verdict with or without consideration of Cantrell's comments. Thus, we find that the trial judge did not err in denying the motion for new trial on this basis.
Accordingly, the judgment of the trial court is hereby affirmed.
Costs of this appeal are to be paid by plaintiffs.
AFFIRMED.
NOTES
[1] Lorita Peterson was a tenant at the time of the accident and she assisted plaintiffs with the injured child. She claimed that, after she agreed to testify to the condition of the premises on behalf of plaintiff, she was evicted by Cantrell. She also claimed that Cantrell tried to keep her from testifying by threatening that she would get in trouble if she testified. Cantrell denied the accusations.