694 So.2d 394 (1997)
Edward MORGAN
v.
ABC MANUFACTURER, DEF Insurance Company, GHI Parts Suppliers, et al.
No. 96-CA-59.
Court of Appeal of Louisiana, Fifth Circuit.
January 15, 1997.
Order Granting Rehearing in Part March 13, 1997.
*395 Lisa A. Montgomery, Diana L. Tonagel, Lobman, Carnahan and Batt, Metairie, for Plaintiff/Appellant Edward Morgan.
Ronald A. Johnson, Bettye A. Barrios, Johnson, Johnson, Barrios & Yacoubian, New Orleans, for Defendants/Appellees Worketec Temporaries, Inc., et al.
Before CANNELLA and DALEY, JJ., and GARVEY, J. Pro Tem.
RICHARD J. GARVEY, Judge Pro Tem.
This appeal relates to a suit in tort filed by an employee against several defendants for injuries sustained in a work-related accident. Plaintiff, Edward Morgan, who was employed by Goldin Industries of Louisiana, Inc., (Goldin) was injured when he was struck by a piece of metal being moved by a crane. Plaintiff alleged in his lawsuit that Darryl Hines, an employee of Worktec Temporaries, Inc. (Worktec), who was assigned to work for Goldin, negligently hooked the load on the crane. Worktec argued that Darryl Hines was a borrowed employee of Goldin and thus, it was immune from tort liability under the worker's compensation statute. Based upon the jury's finding that Hines was a borrowed employee of Goldin, the trial court rendered judgment in favor of Worktec. We affirm.

FACTS
Edward Morgan filed suit seeking damages from several unnamed and fictitious defendants and one named defendant, Crawford & Company (Crawford). The trial court granted plaintiff's motion to litigate without payment of costs in advance, pursuant to LSA-C.C.P. art. 5181, but qualified the order as follows, "if judgment for plaintiff court costs shall be paid first out of the proceeds". The parties began discovery in this matter and filed numerous motions regarding discovery, which are not pertinent to the issues in this appeal. Subsequently, Crawford filed a peremptory exception of no cause of action. On April 19, 1993, the trial court rendered judgment maintaining Crawford's exception and dismissing plaintiff's claims. A second judgment dated April 20, 1993, was also signed by the judge and rendered in favor of Crawford. On June 8, 1993, in 93-C-404, this Court denied plaintiff's application for writs to review this ruling. Plaintiff also appealed the judgments and in Morgan v. ABC Manufacturer, 93-701 (La.App. 5 Cir. *396 3/16/94), 637 So.2d 1076, we affirmed the trial court's judgment of April 20, 1993, maintaining Crawford's exception of no cause of action. However, we set aside that portion of the April 19, 1993, judgment stating that plaintiff's claim was dismissed with prejudice and allowed the plaintiff time to amend his petition. Subsequently, plaintiff amended his petition and added allegations related to the cause of action against Crawford.
On September 2, 1993, plaintiff amended its petition to add several named defendants, Zito Fleeting, Inc. (Zito Fleeting), Zito Towing, Inc. (Zito Towing), Riverside Ventures, Inc. (Riverside), Clark Equipment Company, Inc. (Clark), Jerry M. Behimer (Behimer), Goldin Industries of Louisiana, Inc. (Goldin), Worktec Temporaries, Inc. (Worktec), and their insurers. In February of 1994, Traveler's Insurance Company (Travelers), the worker's compensation insurer, intervened. Prior to trial, Travelers settled and was dismissed from the suit. Plaintiff also dismissed defendants Clark, Behimer, Goldin, and Crawford.
Subsequently, motions for summary judgment were filed by Zito Fleeting, Zito Towing, and Riverside and by Worktec and its insurers. After argument on September 21, 1994, the trial court granted the motions as to defendants Zito Fleeting, Zito Towing, and Riverside.[1] On October 19, 1994, the trial court deferred Worktec's motion to the trial on the merits.
The case proceeded to trial and the jury rendered its verdict and finding that Darryl Hines was a borrowed employee of Goldin. The trial court adopted this verdict in its judgment of May 24, 1995. The judgment was rendered in favor of defendants Worktec and its insurers, dismissed all the claims of plaintiff with prejudice, and awarded costs in favor of Worktec and against plaintiff. Thereafter, Worktec filed a motion to tax costs. Plaintiff filed a motion for new trial as to that portion of the judgment assessing costs against him. On June 20, 1995, the trial court denied the motion for new trial.[2] Plaintiff appealed the judgment as to the merits and the assessment of costs against him. Later after a hearing, the trial court rendered judgment taxing costs against plaintiff in the amount of $9,010.68.[3]

JURY INSTRUCTION
Plaintiff argues that the trial court erred in failing to give his requested jury instruction regarding the doctrine of statutory co-employee immunity addressed in Johnson v. Alexander, 419 So.2d 451 (La.1982). Plaintiff also argues in his brief that the jury interrogatory concerning borrowed employee was erroneous.
Defendant contends that plaintiff failed to preserve his objection because his counsel did not state the grounds for the objection. Worktec also argues that such an instruction was not necessary because it did not assert a defense based upon the statutory co-employee doctrine. As to defendant's arguments, plaintiff counters that the objection was sufficient and that the trial court was "well aware of the basis" for the objection.
LSA-C.C.P. art. 1793 creates a mandatory rule for preserving an objection to a trial court's ruling regarding requested jury instructions. Bienvenu v. State Farm Mut. Auto. Ins. Co., 545 So.2d 581, 587 (La.App. 5 Cir.1989); Bechtel v. Entringer Bakeries, Inc., 422 So.2d 1299, 1301-1302 (La.App. 5 Cir.1982). In order to preserve the right to appeal from the failure to give requested instructions or the giving of an improper instruction, a litigant adversely affected must state specifically the matter which he finds objectionable and the grounds for his objection to the jury instructions. Merely making a blanket objection, without assigning any reasons therefor, is insufficient. Creppel v. Coronation Shipping Co., 572 So.2d 1051, 1053 (La.App. 5 Cir.1990), writ denied, 575 So.2d 390 (La.1991), cert denied, 502 U.S. *397 812, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991); Christensen v. State Farm Mut. Auto. Ins. Co., 552 So.2d 1377, 1379-80 (La.App. 5 Cir. 1989), writ denied, 558 So.2d 572 (La.1990); Hill v. Lamulle, 506 So.2d 690, 695-696 (La. App. 5 Cir.1987).
In this case the record reflects that the plaintiff, although timely objecting to the trial court's refusal to give the instruction, failed to state the grounds for his objection as required.[4] This does not comply with the provisions of LSA-C.C.P. art. 1793. Accordingly, under the clear and unambiguous provisions of our statutory law, plaintiff waived his right to appeal on this issue. Consequently, plaintiff cannot now complain about the trial judge's refusal to submit the requested charge to the jury. Pitard v. Davis, 599 So.2d 398, 400 (La.App. 5 Cir.1992); Hill v. Lamulle, 506 So.2d at 695-696.
Moreover, the trial judge is not required to give the precise instructions submitted by either party. Fisher v. River Oaks, Ltd., 93-677 (La.App. 5 Cir. 3/16/94), 635 So.2d 1209, 1213, writ denied, 94-0932 (La.6/3/94), 637 So.2d 503; Jones v. Liberty Mut. Ins. Co., 568 So.2d 1091, 1094 (La.App. 5 Cir.1990), writ denied, 572 So.2d 72 (La. 1991). The trial judge must only give instructions which properly reflect the law which is applicable to the facts of a particular case. Fisher v. River Oaks, Ltd., 635 So.2d at 1213; Jones v. Liberty Mut. Ins. Co., 568 So.2d at 1094. Adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. Fisher v. River Oaks, Ltd., supra; Jones v. Liberty Mut. Ins. Co., supra. The adequacy of jury instructions must be determined in light of the instructions as a whole and the manifest error standard of review may not be ignored unless the instructions were so incorrect or inadequate as to preclude the jury from reaching a verdict based on the law and the facts. Fisher v. River Oaks, Ltd., supra; Jones v. Liberty Mut. Ins. Co., supra.
We have reviewed the jury instructions as a whole and find that the trial court properly instructed the jury on the law and how the jury was to apply the law to the facts. Consequently, we find that the trial judge did not err in refusing to give the charge submitted by plaintiff.
Likewise, plaintiff offered no objection at trial to the interrogatories presented to the jury and may not be heard to complain of the alleged insufficiency for the first time on appeal. See Nailor on Behalf of Nailor v. International Harvester Co., 430 So.2d 784 (La.App. 5 Cir.1983), writ denied, 437 So.2d 1148 (La.1983) and Nichols v. U.S. Rentals, Inc., 556 So.2d 600, 608 (La.App. 5 Cir.1990), writ not considered, 558 So.2d 597 (La.1990).
Thus, plaintiff's arguments related to this assignment of error lack merit.

BORROWED EMPLOYEE STATUS
Plaintiff argues that the jury's finding that Darryl Hines was a borrowed employee of plaintiff's employer, Goldin Industries, was erroneous. Specifically, plaintiff contends that defendant Worktec failed to carry its burden of proving the suspension of its employment relationship with Hines and the existence of a new relationship between Hines and Goldin.
Here, defendant Worktec is asserting the borrowed servant doctrine to defend against plaintiff's tort claim. Defendant contends that its regular employee Darryl Hines had been borrowed by plaintiff's employer Goldin, *398 thus making the two co-employees and establishing a bar to tort recovery against Hines' general employer, Worktec.
Whether a person is a borrowed employee is an issue of fact. There is a presumption that the general employer retains control of his employee. Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951); Marzula v. White, 488 So.2d 1092 (La.App. 2 Cir.1986). The party who alleges that an employee has become a borrowed servant bears the burden of proof on that issue and a mere showing of a division of control is not enough to meet that burden. Benoit v. Hunt Tool Co., supra; Ferguson v. Lambert, 501 So.2d 911, 913 (La.App. 5 Cir.1987).
In order for an employee of the general employer to become the borrowed employee of the special or borrowing employer, it must be shown that the employer-employee relationship between the general employer and his employee has been suspended and a new and like relationship has been created between the general employer's employee and the special or borrowing employer. This change of relationship does not occur when the work being performed by the general employer's employee is the general employer's work and where he retains some control over his employee. Benoit v. Hunt Tool Co., supra; Ferguson v. Lambert, supra.
Past jurisprudence refers to the commonly utilized test of "right of control." However, in a more recent case, Garvin v. Perret, 95-217 (La.App. 5 Cir. 2/14/96), 670 So.2d 1250, 1253, writ denied, 96-0674 (La.5/10/96), 672 So.2d 922, this Court, quoting from Walters v. Metropolitan Erection Co., 94-0162 (La. App. 4 Cir. 10/27/94), 644 So.2d 1143, 1146, writs denied, 94-2858 and 94-2870 (La.2/9/95), 649 So.2d 420, noted the several factors to be considered when determining the existence of the borrowed servant doctrine:
There is no fixed test, nor is the existence of a contract or any other single factor determinative, but the following factors should be considered in determining the existence of a borrowed servant relationship: "(1) first and foremost, right of control; (2) selection of employees; (3) payment of wages; (4) power of dismissal; (5) relinquishment of control by the general employer; (6) which employer's work was being performed at the time in question; (7) agreement, either implicit or explicit between the borrowing and lending employer; (8) furnishing of necessary instruments and the place for performance of the work in question; (9) length of time in employment, (10) acquiescence by the employee in the new work situation."
Garvin v. Perret, 670 So.2d at 1253. See also Ferguson v. Lambert, supra.
In this case, we note that Hines' general employer, Worktec, was in the business of supplying and providing labor services to those with whom it contracted. Worktec assigned Hines to work at Goldin. According to Worktec's Director of Risk Management Christopher Lepre, Worktec does not furnish a place for employees such as Hines to work; rather, there is a shared employment arrangement in which Worktec is the general employer and the client (Goldin) is the supervising employer. Worktec issues a pay check to the employee and withholds items such as taxes and social security. Worktec bills the client for the payroll and insurance (including liability and worker's compensation) amounts. Here, Goldin paid these amounts to Worktec. The evidence further showed that Hines' work time was recorded on "Worktec" time sheets, but signed by Goldin's operations manager. Based upon these time sheets, Goldin paid Worktec and Worktec paid Hines.
Although Worktec's brochures indicate that it "continually monitors the performance of its employees," Lepre explained that meant receiving feedback from Goldin's supervisors to learn if they were pleased with Hines' work. No personnel from Worktec ever supervised Hines at the job site. Lepre further testified that the client instructs the employee and is always in charge of supervising the employee.
Darryl Hines testified that he did not receive training by Worktec for the type of work he performed for Goldin. Rather, it was Goldin's employee who instructed him on how to hook the loads on the crane. His work was supervised by Keith Templet, the *399 crane operator at Goldin. All the work was completed using Goldin's equipment. Additionally, Hines performed other duties, other than hooking loads, at the direction of Goldin employees. Although he was not sure if Worktec could remove him from the job at Goldin, he had never been removed from a job by Worktec. His assignments at previous companies ended when his services were no longer needed. However, Hines did admit that Worktec could ultimately fire him.
Mark Harding, Goldin's operations manager, testified that a request was made from Goldin for general labor and that there were no expectations of training or expertise in the employee. The crane operator at Goldin trained the hired persons to hook the loads. Harding further stated that Templet supervised the personnel sent from Worktec; no supervisors came from Worktec to supervise the work. Furthermore, if Goldin did not like a particular person's work, it had the authority to dismiss that person from the job.
Here, in analyzing the facts, we find that Goldin had the control over Hines' work and continued employment at its job site. Although Goldin made a request for general labor and Worktec selected Hines, Goldin could have specifically requested Hines. Hines received a payroll check from Worktec's account, but Goldin actually paid for the services. Although Worktec had the authority to end its employment relationship with Hines, Goldin had the authority to dismiss Hines as an employee in the assigned job. Once Hines was assigned to Goldin, he reported to work at its job site and was supervised by employees of Goldin, not Worktec. Services offered by Worktec included monitoring the worker's performance, but this was done based upon information supplied by Goldin. The testimony shows that the actual purpose of this monitoring was for Worktec to maintain a good relationship with its client, Goldin, rather than providing actual onsite supervision of the employees. All supplies and equipment used by Hines were furnished by Goldin and all work was completed at Goldin's job site. Prior to the accident, Hines had worked at the Goldin site for approximately three months and performed work according to the directions of Goldin employees. Also, according to the agreement with Worktec, Goldin could have directly hired Hines after twelve weeks employment without paying an extra fee.
Considering all the testimony, we can not say that the jury erred in its finding that Hines was a borrowed employee of Goldin. It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside the findings of fact in the absence of manifest error or unless they are clearly wrong. Because this finding of fact is not manifestly erroneous, we affirm the judgment of the trial court. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3 Cir.1979), writ denied, 374 So.2d 660 (La.1979); Ochsner Clinic v. Maxicare Louisiana, Inc., 95-959 (La.App. 5 Cir. 3/26/96) 672 So.2d 979, 982, writ denied, 96-1022 (La.6/7/96), 674 So.2d 974.
Because it is our conclusion that plaintiff's assignments of error pertaining to the jury instructions and the jury's finding that Hines was a borrowed employee are without merit, plaintiff's request for a de novo review on the issue of damages is not warranted. See Luman v. Highlands Ins. Co., 25,445 (La.App. 2 Cir. 2/23/94), 632 So.2d 910, 913-915.

COSTS
Plaintiff contends that costs should not have been assessed against him because he was allowed to proceed in forma pauperis, pursuant to LSAC.C.P. art. 5181-5188.
The law is clear that a plaintiff who has been allowed to sue in pauper status may be cast for costs in the event he or she is unsuccessful in prosecuting the claim. LSA-C.C.P. art. 5188; Schexnayder v. Perkins, 94-228 (La.App. 5 Cir. 11/16/94), 646 So.2d 1065, 1073. Thus, the assessment of costs against plaintiff was proper.
Plaintiff also argues that the costs taxed against him were excessive and specifically challenges the award of certain items taxed as costs as follows:[5]

*400
Depositions $1,036.92
Videotape 450.00
Expert Witness Fees 6,102.90

Depositions
Plaintiff contends that the trial court erred in taxing the costs of the deposition testimony of Lawrence Robichaux, Richard Harding, Darryl Hines, Christopher Lepre, and Keith Templet. Citing Hill v. Lamulle, supra, he contends that because these depositions were actually introduced by him and not by defendant, the party seeking the costs, the costs are not recoverable. Defendant counters that the Hill case actually holds that the deposition costs were not allowed because they were not introduced into evidence at the trial by either party. We agree. Hill holds that the costs of depositions are recoverable if they are introduced into evidence. Furthermore, the cost of a deposition is allowable pursuant to LSA-R.S. 13:4533. That statute provides:
[t]he costs of the clerk, sheriff, witness' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court, shall be taxed as costs.
The law does not require that the party seeking costs of the deposition be the same party that introduced the deposition. Here, since the depositions were introduced into evidence at trial, the costs associated with them were properly assessed.

Videotape
Plaintiff also contends that there is no statutory basis for the assessment of the costs associated with the preparation and presentation of a videotape introduced by Worktec. Plaintiff argues that the videotape which showed the simulation of the crane's operation is demonstrative evidence and that there is no statutory basis for the assessment of costs of demonstrative evidence.
In support of his argument, plaintiff cites Gore v. American Motorists Ins. Co., 244 So.2d 894 (La.App. 1 Cir.1971). However, the Gore case addresses the issue of whether a premium for a suspensive appeal bond is a taxable cost in an appeal and addresses the interpretation of the provision "all costs occasioned by the appeal" in LSA-R.S. 13:4531. Here, the appropriate governing statute is LSA-R.S. 13:4533, which allows the taxing of "all other costs allowed by the [trial] court...." In light of that statute and the trial court's discretion, we conclude that the costs associated with the videotape, were properly taxed as costs.[6]

Expert Witness Fees
Plaintiff contends the trial court erred in awarding expert witness fees because the experts only testified to facts and circumstances which could be stated by lay witnesses and which were not essential to the case. Specifically, he argues the testimony of Lawrence J. Robichaux did not add scientific credence to the testimony of other witnesses and that the amount of the fee was excessive. Plaintiff also argues that defendants were not entitled to the testimony of Dr. Stuart Wood, an economist, because his testimony was not essential or necessary and was cumulative. As to a third expert, vocational rehabilitation expert, Ms. Judith Lide, plaintiff contends that her testimony did not provide any scientific or technical knowledge.
LSA-R.S. 13:3666 authorizes the trial court to determine the amount of fees to be paid an expert witness either, "(1) from the testimony adduced upon the trial of the cause, the court shall determine the amount thereof and include same or, (2) by rule to show cause...."
The amount fixed for expert fees is a matter within the discretion of the trial court and should not be disturbed on appeal absent a showing of manifest abuse of that discretion. *401 Cajun Elec. Power Co-op. v. Owens-Corning Fiberglass Corp., 580 So.2d 465, 466, (La.App. 5 Cir.1991); Ellis v. Allstate Ins. Co., 453 So.2d 1209, 1215 (La.App. 5 Cir. 1984).
The transcript of the hearing on the rule to assess costs was not designated by plaintiff and is therefore, not contained in the record. Thus, we have nothing in the record on appeal to show that the trial court was manifestly erroneous in awarding the fees. Nevertheless, from our careful review of the trial transcript and the testimony at the trial, we cannot say the award of these fees was improper or excessive. Consequently, the ruling awarding the expert witness fees is affirmed.
For the above reasons, the judgment of the trial court is affirmed. Plaintiff-appellant is to pay all costs of this appeal.
AFFIRMED.

REHEARING GRANTED IN PART
Plaintiff-appellant correctly states that the record contains the transcript of the August 22, 1995 hearing on the motion to tax costs and signed written judgment of the ruling on his motion for new trial. This court grants a rehearing in part to consider the transcript of the August 22, 1995 motion to tax costs and the judgment denying plaintiff's motion for new trial. However, there is nothing in these to warrant a change in our original opinion. Likewise, two minor items noted by plaintiff in his application for a rehearing, an incorrect party in the case's title and the incorrect address of his counsel, have no effect. In other respects, the application for rehearing is denied. Accordingly, the previously rendered judgment of this Court remains unchanged.
REHEARING GRANTED IN PART AND ORIGINAL HOLDING OF COURT AFFIRMED.
NOTES
[1] The transcript of the hearing indicates the trial judge granted this motion. There is no signed written judgment in the record as to this ruling. However, the record does contain a joint motion and signed order to dismiss these three defendants after the trial.
[2] There is no signed written judgment in the record.
[3] After the granting of the order of appeal, the trial court has jurisdiction to "set and tax costs and expert witness fees." LSA-C.C.P. art. 2088(10).
[4] At the close of the evidence and out of the presence of the jury the following colloquy between the court and counsel for plaintiff appears in the record at Vol. 10, pp. 2458-59:

THE COURT:
Okay, let's gothe Jury Chargesis there any one who wishes to put anything on the record in regard to the Jury Charges?
MS. MONTGOMERY:
Your Honor, I would likefor the plaintiff, I would like to object to the failure to include the instruction on Johnson versus Alexander and I don't have that number in front of me, I believe it's number 10.
THE COURT:
Alright. Was it 10 or 5? I don't remember, but okay, denied. What? It was 10?
LAW CLERK:
10 and 11
THE COURT:
10 and 11alright, denied. Yes, ma'am, anything else?
MS. MONTGOMERY:
That's it, Your Honor.
[5] Appellant does not make any specific arguments about that portion of the award attributed to court costs, lay witness fees and photocopy costs.
[6] We note that a portion of these costs were attributable to the playing back of the videotape at trial. In Roy v. Gupta, 606 So.2d 940, 946 (La.App. 3 Cir.), writ denied, 609 So.2d 232 (La. 1992), the Third Circuit found that the trial judge properly exercised his discretion in awarding the costs of playing back a videotaped deposition. That court found that LSA-R.S.13:4533 does not contain a prohibition against the taxing of deposition replay costs. Rather, reading LSA-R.S. 13:4533 and LSA-C.C.P. art.1920 together, it could "not escape the conclusion that the trial court properly exercised its discretion." Although we are aware of Goodwin v. Hartford Acc. & Indemn. Co., 530 So.2d 1218 (La.App. 2 Cir. 1988) which holds to the contrary, we choose to follow the Third Circuit's interpretation of the statutes related to assessment of costs.