12DALEY, Judge.
This appeal is before this court on remand from the Louisiana Supreme Court. Plaintiff/appellant, Edward Morgan, was injured while in the course and scope of his employment as a scrap steel burner at the Harvey yard of Goldin Industries of Louisiana, Inc., on October 23, 1992. Morgan suffered severe injuries when he was struck with a piece of scrap metal that fell from a sling attached to a crane operated by Goldin personnel. Morgan sued many different parties in tort. The tort suit went to jury trial against defendant, Work-tec Industries, a company who supplied temporary workers to Goldin Industries and who employed Darryl Hines, the worker who allegedly hooked the piece of metal that fell from the sling and struck Mr. Morgan.
The jury’s interrogatories required the jury to make a finding of fact whether Hines was Goldin’s borrowed servant. The jury found that Hines was, in fact, Goldin’s borrowed servant, and ceased their deliberations at that point, as per the pinterrogatories’ instructions. They made no other findings. A verdict was entered in favor of Worktec Industries and their insurers. Morgan was cast in judgment for Worktee’s costs of defending the litigation, in the amount of $9,010.68.
Morgan appealed to this court, and this court affirmed the judgment of the trial court. Morgan v. ABC Manufacturer, 96-59 (La.App. 5 Cir. 1/15/97), 694 So.2d 394.
Morgan sought writs to the Supreme Court, who granted his application and reversed the trial court and this court, finding that “the trial court committed legal error in instructing the jury that a finding that Hines was Goldin’s borrowed employee would relieve Worktec of liability for his torts.” Morgan v. ABC Manufacturer, 97-0956 (La.5/1/98), 710 So.2d 1077, 1084. The Supreme Court remanded the case to this court for a de novo review of the record and an entry of judgment on the merits as to Morgan’s claim of negligence against Worktec.
After thorough consideration of the evidence and testimony, we find no negligence on the part of Worktec’s employee, Darryl Hines. We enter judgment in favor of Worktec and its insurers, and against plaintiff/appellant, Edward Morgan.
This accident took place in Goldin’s Harvey yard. Plaintiff, Edward Morgan, was working as a burner with several other burners, cutting pieces of scrap metal. It was his second day on the job. An employee of Goldin, Keith Templet, was lift *1270 ing pieces of scrap metal with a Lima 1200 Crawler Crane, from a barge and transporting them to a rail car near where Morgan and the other burners were working. Plaintiff, Edward Morgan, was struck with a piece of metal that fell from the crane. The Worktec employee, Hines, was engaged in the process of hooking the scrap metal on to four slings with open throat hooks at the end of the crane’s boom cable. Some |4dispute exists as to whether Hines hooked the particular load that fell on Morgan, and whether two or four slings and hooks were being used that morning.
The hooking process was described in the testimony of several fact and expert witnesses, and this court reviewed an illustrative video tape entered into evidence by Worktec. Suspended from the end of the crane’s boom cable were the slings and open-throat hooks, which have no latches or closure devices. The hooker (Hines or someone else) would select the pieces of scrap metal to be hooked. These pieces varied in size, but were usually large, several feet wide, 12 to 20 feet long,54 to % inches thick. Holes had been cut in the metal near one end of the piece, for the hooks. The hook man would insert the hook into the hole in the metal. The operation was gravity controlled: if a hook was not securely in the hole, the metal would fall off the hook as the crane operator raised it slowly from the ground. The hooker was required to signal the crane operator when the hooks were secure. The metal was hooked securely if the crane operator was able to lift it off the ground without the metal falling off the hook. The crane operator then swung the load around to the railcar area, signaling all employees as he started to swing the load to warn them of the crane’s movement. Yard rules and safety regulations required that no employees be under the path of the crane’s boom as it moved.
In this particular incident, we find that Hines hooked the metal pieces to the crane via the sling and hooks, and the load was lifted by Templet, the crane operator. There was no indication that the load might have been hooked improperly because all the pieces stayed on the hooks as it was raised from the ground. Templet swung the load to the rail car. He testified that inertia caused the load to continue to move slightly and caused the load to make contact with the rail car. This contact produced slack in one of the slings, which in turn caused the open-throated hook to disengage |sfrom that piece of metal. This piece of metal fell from the hook and struck Mr. Morgan, causing his injuries.
On appeal, Morgan argues that Hines violated OSHA and ANSI standards by failing to ensure that the load was properly hooked and secured before it was lifted. They also argue that Hines lied in his testimony, and was impeached by other witnesses, when he denied being the one who hooked this load. Morgan further argues that Worktec is liable for its negligence in failing to properly screen, test, and train Hines. Plaintiff further argues that Worktec is jointly and solidarily liable with Goldin for his injuries, as this accident occurred in 1992 before the amendment of LSA-C.C. art. 2324.
We find that Hines and Worktec were not negligent.
Negligence of Worktec and/or Hines
Plaintiff argues that Darryl Hines violated OSHA and ANSI standards by failing to ensure that the load that ultimately fell on plaintiff was properly hooked and secured before it was lifted.
Initially, we note that Hines testified that he did not begin hooking loads that day until after Morgan’s accident had occurred. His testimony contradicts the recollections of the crane operator, Keith Templet, and other employees, who stated that Hines was the “hooker” that day and hooked the load that ultimately fell on Morgan. His testimony also contradicts information he gave to an investigator of this accident. We find that Hines did hook *1271 the load of steel that caused plaintiffs injury. However, as discussed below, our view of the evidence shows that the load was not improperly hooked, and that the crane operator’s negligence caused the accident.
| fiMark Harding, the yard foreman, investigated the accident and interviewed the personnel who were in the yard. In his investigation, no one indicated to him that the load was improperly hooked.
The crane operator, Keith Templet, testified that he had been employed at Goldin for five years as the operator of the crawler crane. He was using a four part sling and they were moving three to four pieces of iron on the day of the accident, of varying sizes. Templet testified that Hines was hooking the loads, and Morgan, Jimmy Ellor, and three other workers were working in the yard as burners. Templet said that he relied on his hooker to tell him it was ok and then he would pick up the load. He picked it up, blew his horn to signal the workers, and swung the load toward the rail car. He did not remember swinging it fast or making any sudden braking moves. When he stopped his swing, one piece of iron went a little further and hit another piece of iron on the railcar and fell. He did not know what piece was hit. As he was swinging his load, he saw Morgan and Ellor stand up and move out of the way. Templet did not see the metal hit Morgan. He saw Ellor motion for him to come quickly, so he lowered the rest of the load to the ground, locked off the crane, and went down.
Templet testified that he supervised the burning field. He wouldn’t say they “trained” new employees, but they did “show” new people how to hook. He said if there was a way to get four pieces of iron to move, they did it. When a load was about one foot off the ground, he said you would know if it was hooked or not. Templet testified that he is in charge of making sure the lift is safe. None of the pieces on this load fell when it was raised, so he felt all the pieces were hooked right. Templet said that he always sounded the horn when he began to move the load, and he saw Morgan and Ellor both move when they needed to.
17Templet was trying to place the pieces of iron on top of other pieces on the flat deck railcar. Templet testified that the piece of iron fell when it hit something else. Templet admitted that if the piece of metal makes contact with something else while he is moving it with the crane, there is the possibility of it coming loose and falling.
The plaintiffs expert, Fred Liebkemann, testified as a mechanical engineer. He inspected the crane and sling. Liebkem-ann found two causes for the accident. First, he opined that the load was improperly and insecurely hooked, and second, he said the next cause of the accident was that a portion of the load struck a piece of plate on the railcar, with the result that the insecurely hooked piece fell off. He did not believe it would have fallen as described by Templet if it had been properly hooked. Liebkemann testified that the sling and hook apparatus in use that day at Goldin did not violate any design standards. He also testified that there are more secure alternatives available, but that the open throat hook are permissible for this type of work under all the standards and regulations with which he is familiar. He knew of no safety code, rule, or regulation that was violated in this case.
Liebkemann stated that he felt it was inappropriate to use this sling to move four pieces at a time, because it depends on gravity and the weight of the load to keep the load hooked. He stated that a shackle hook would have been a safer choice, but it, too, had advantages and disadvantages in its use.
Liebkemann acknowledged that industry standards demanded that care be taken in the movement of a crane load that it not come into contact with obstructions, and in his opinion, the Goldin crane operator violated safety standards by allowing his load *1272 to hit other objects. He acknowledged that according to industry standards, the crane operator has the authority to stop whenever he senses danger or that the load is not securely hooked. It is the crane operator who should have his eyes on the load |8at all times. He should also be aware of personnel and signal them to move if necessary while he is moving the load.
Liebkemann acknowledged that the crane operator is the person in control of the lift. Once the crane operator lifts the load a foot off the ground and is satisfied with the lift, the operation is out of the hook man’s hands. After that, the hook man cannot control whether the pieces bang together, or whether the load hits some obstruction. He testified that with an open throat hook, all it takes is an instant of slack for the hook to fall out of the hole.
Worktec called Lawrence Robiehaux to testify as an expert in crane operations. He reviewed all the depositions, testimony, and went to Goldin’s yard. There, he saw the crane in operation and made a video demonstrating the crane’s operation. The video was played for the jury following a stipulation that it was not a reenactment of the accident.
Mr. Robichaux’s opinion was that a number of safety violations occurred. He found that the accident was caused by the inertia in the crane’s swing that allowed the load to make contact with the rabear, allowing slack in the sling causing the hook to fall out of the hole in the metal plate. Robiehaux opined that the crane operator failed to adhere to the safety regulation about not handling loads over people working in the area. He also felt that the crane operator was a little rough in handling the load, which allowed the load to swing into the railcar. He opined that using open throat hooks were also improper in this situation with plates of varying sizes. Last, he said that Morgan was in violation for failure to remove himself from a hazardous area.
In Robichaux’s opinion, there was no improper action by the person who hooked this load contributing to this accident, because once the load was hooked and the operator began lifting it, then the operator had control of the load: it was either Inhooked or it wasn’t hooked. Goldin personnel were responsible for the proper method of lifting the load, as they were for choosing the type of equipment utilized. He opined that the crane operator was the person responsible for assuring that the load is safely lifted.
Next, Robiehaux explained that the safe working area around a crane is not just determined by the length of the boom, but also by the length of the pieces of metal in the load. In this case, the pieces were up to 20 feet long, which added 20 feet to the true working radius of the crane. He testified that while Morgan and Ellor were not working within the crane’s radius, they were located within the working area of the load, as computed by adding the load’s length to the radius of the crane. Robi-chaux testified that the very fact the fallen piece of metal was able to reach out and strike Morgan shows that he was within the working area of the load.
Robiehaux agreed with Liebkemann that it was a safety violation for the crane operator to allow the load on the crane to come in contact with an obstruction, the scrap metal in the railcar.
After thorough consideration of the above evidence and testimony, we find that Darryl Hines did not negligently hook the metal plate. We conclude that in using the open throat hook, the load is never “securely” hooked, because it is an inherently unsecured manner of lifting, depending entirely upon gravity to keep the load on the hook. It is an inherent risk of using this device that a load can become unhooked by the creation of slack in the line, because the hook is not “secured” to the load by anything other than gravity. Hooking the load was a simple process; there was only one way to hook it and if *1273 the hook had not been placed properly, the load would have fallen off the hook and sling right at the hooker’s location. The fact that the load was raised and moved all the way to the railcar, and did not become unhooked until it met |inthe obstruction, shows that the hooker performed his job properly. Once the load was raised and no hooks disengaged, the crane operator took over responsibility for the completion of the movement of the load. There is no evidence that the pieces were hooked improperly. Further, we agree with the testimony of Mr. Robiehaux that the position of the hooks and the number of pieces being moved were not material to the cause of this accident. The fault in this accident must be attributed to the crane operator in his movement of the load and the inertia that caused the load to make contact with the railcar, and the fact that Edward Morgan was working in an unsafe area while the iron was being moved from the barge to the rail car.
Negligence of Worktec — Screening, Testing, and Training
Plaintiff argues that Worktec is negligent in failing to properly screen, test, train, and continually monitor the performance of Darryl Hines, contrary to its contractual guarantee that it had done so, and this negligence caused the accident. Because we find that Darryl Hines’ performance was not negligent, this assignment of error is moot.[1]
Costs
This court reviewed the issue of assessing costs against a litigant proceeding in forma pauperis in its previous opinion. Morgan v. ABC Manufacturer, 96-59 (La.App. 5 Cir. 1/15/97), 694 So.2d 394. For the reasons stated therein, we affirm the assessment of costs against plaintiff.
Plaintiff, Edward Morgan’s, petition for damages against Worktec Industries is DISMISSED at his cost for failure to prove by a preponderance of the evidence that lnWorktec or its employee, Darryl Hines, negligently caused the injury of Edward Morgan.
JUDGMENT ENTERED IN FAVOR OF DEFENDANT, WORKTEC INDUSTRIES, INC., AND AGAINST PLAINTIFF, EDWARD MORGAN, DISMISSING PLAINTIFF’S PETITION AT HIS COST.

. We note Keith Templet's testimony that when Goldin requested the labor for which Hines was supplied, it requested a general laborer only with no specific expertise required.